# SAN DIEGO LAND AND TOWN COMPANY *v.* NATIONAL CITY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 25. Submitted October 11, 1898. — Decided May 22, 1899.

Under the provisions of the act of the legislature of California of March 7, 1881, c. 52, making it the official duty of the board of supervisors, town council, board of aldermen or other legislative body of any city

and county, city or town, in the State, to annually fix the rates that shall be charged and collected for water furnished, one who furnishes water is not entitled to formal notice as to the precise day upon which the water rates will be fixed, as provision for hearing is made by statute in an appropriate way.

There is no ground in the facts in this case for saying that the appellant did not have or was denied an opportunity to be heard upon the question of rates.

It was competent for the State of California to declare that the use of all water appropriated for sale, rental or distribution, should be a public use, subject to public regulation and control; but this power could not be exercised arbitrarily and without reference to what was just and reasonable between the public and those who appropriated water, and supplied it for general use.

The judiciary ought not to interfere with the collection of such rates, established under legislative sanction, unless they are so plainly and palpably unreasonable, as to make their enforcement equivalent to the taking of property for public use without such compensation as, under the circumstances, is just both to the owner and the public.

In this case it is not necessary to decide whether the city ordinance should have expressly allowed the appellant to charge for what is called a water right.

On careful scrutiny of the testimony, this court is of opinion that no case is made which will authorize a decree declaring that the rates fixed by the defendant's ordinance are such as amount to a taking of property without just compensation; and that the case is not one for judicial interference with the action of the local authorities.

THIS appeal brings up for review a decree of the Circuit Court of the United States for the Southern District of California dismissing a bill filed in that court by the San Diego Land and Town Company, a Kansas corporation, against the city of National City, a municipal corporation of California, and John G. Routsan and others, trustees of that city and citizens of California. 74 Fed. Rep. 79.

The nature of the cause of action set out in the bill is indicated by the following statement:

The constitution of California declares —

That "no corporation organized outside the limits of the State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State." Art. 12, § 15;

That "the use of all water now appropriated, or that may hereafter be appropriated, for sale, rental or distribution, is hereby declared to be a public use, and subject to the regulation and control of the State, in the manner to be prescribed by law; provided, that the rates or compensation to be collected by any person, company or corporation in this State for the use of water supplied to any city and county, or city or town, or the inhabitants thereof, shall be fixed, annually, by the board of supervisors, or city and county, or city or town council, or other governing body of such city and county, or city or town, by ordinance or otherwise, in the manner that other ordinances or legislative acts or resolutions are passed by such body, and shall continue in force for one year, and no longer. Such ordinances or resolutions shall be passed in the month of February of each year, and take effect on the first day of July thereafter. Any board or body failing to pass the necessary ordinances or resolutions fixing water rates, where necessary, within such time, shall be subject to peremptory process to compel such action at the suit of any party interested, and shall be liable to such further processes and penalties as the legislature may prescribe. Any person, company or corporation collecting water rates in any city and county, or city or town in this State, otherwise than as so established, shall forfeit the franchises and water works of such person, company or corporation to the city and county, or city or town where the same are collected, for the public use." Art. 14, § 1; and,

That "the right to collect rates or compensation for the use of water supplied to any county, city and county, or town, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law." Art. 14, § 2.

By an act of the legislature of California, passed March 7, 1881, c. 52, it was provided:

"§ 1. The board of supervisors, town council, board of aldermen or other legislative body of any city and county, city or town, are hereby authorized and empowered, and it is made their official duty, to annually fix the rates that shall be charged and collected by any person, company, association or

corporation, for water furnished to any such city and county, or city or town, or the inhabitants thereof. Such rates shall be fixed at a regular or special session of such board or other legislative body, held during the month of February of each year, and shall take effect on the first day of July thereafter, and shall continue in force and effect for the term of one year and no longer.

"§ 2. The board of supervisors, town council, board of aldermen or other legislative body of any city and county, city or town, are hereby authorized, and it is made their duty, at least thirty days prior to the 15th day of January of each year, to require, by ordinance or otherwise, any corporation, company or person supplying water to such county, city or town, or to the inhabitants, thereof, to furnish to such board or other governing body in the month of January of each year, a detailed statement, verified by the oath of the president and secretary of such corporation or company or of such person, as the case may be, showing the name of each water-rate payer, his or her place of residence, and the amount paid for water by each of such water payers during the year preceding the date of such statement, and also showing all revenue derived from all sources, and an itemized statement of expenditures made for supplying water during said time." Stats. of Cal. 1881, p. 54.

By an ordinance of the board of trustees of the defendant city approved February 21, 1895, certain rates of compensation to be collected by persons, companies or corporations for the use of water supplied to that city or its inhabitants, or to corporations, companies or persons doing business or using water therein, were fixed for the year beginning July 1, 1895.

For the purposes of that ordinance the uses of water were divided into four classes, namely, domestic purposes, public purposes, mechanical and manufacturing purposes and purposes of irrigation; the rates for each class were prescribed; and it was provided that no person, company or corporation should charge, collect or receive water rates in the city except as thus established.

The bill in this case questioned the validity of the above ordinance upon the following grounds:

That no notice of the fixing of the water rates was given, nor opportunity presented for a hearing upon the matter of rates; that no provision in the constitution or laws of California, under and by virtue of which the board of trustees assumed to act, required or authorized such notice; that water rates were fixed by the Board arbitrarily, without notice or evidence, and were unreasonable and unjust, in that under them the plaintiff could not realize therefrom and from all other sources within and outside of the limits of the defendant city, a sufficient sum to pay its ordinary and necessary operating expenses, or any dividends whatever to stockholders, or any interest or profit on its investment; that so long as the ordinance remained in force the plaintiff would be required by the laws of California to supply water to all consumers within the city at the rates so fixed, which could only be done at a loss to the plaintiff; and that to compel the plaintiff to furnish water at those rates would be a practical confiscation and a taking of its property without due process of law.

The bill also alleged that the defendant city was composed in large part of a territory of farming lands devoted to the raising of fruits and other products, only a small part thereof being occupied by residences or business houses;

That prior to the adoption of the ordinance above set forth, the plaintiff, in order to meet in part the large outlay it had been compelled to make in and about its water system, had established a rate of one hundred dollars per acre for a perpetual water right for the purposes of irrigation, and required the purchase and payment for such water right before extending its distributing system to lands not yet supplied with water or furnishing such lands with water, which rate was made uniform and applicable alike to all lands to be furnished with water within and outside of the city, and such payment for a water right had ever since been charged as a condition upon which alone water would be supplied to consumers for the purposes of irrigation, and many consumers prior to the

adoption of the ordinance had purchased such water right and paid therefor;

That the rate charged for such water right was reasonable and just and was necessary to enable the plaintiff to keep up and extend its water system so as to supply water to consumers requiring and needing the same, and without which it could not operate and extend its plant so as to render it available and beneficial to all water consumers that could with the necessary expenditure be supplied from the system;

That the lands covered by plaintiff's system were arid and of but little value without water, and a water right such as it granted to consumers increased the land in value more than three times the amount charged for such right and was of great value to the land owner;

That the above ordinance fixed the total charge that might be made by the plaintiff for water furnished for purposes of irrigation at four dollars per acre per annum, and as construed by the city and consumers deprived the plaintiff of all right to make any charge for water rights, and the rate was fixed without taking into account or allowing in any way for such water right;

That the amount of four dollars per acre per annum was unreasonably low and required the plaintiff to furnish water to consumers within the limits of the city for purposes of irrigation for less than it furnished the same to consumers outside of the city for the same purpose, and so low that it could not furnish the same without positive loss to itself;

That large numbers of persons residing within the city owning land therein and desiring to irrigate the same were demanding that their lands be connected with the plaintiff's system and supplied with water at the rate of four dollars per acre per annum and without any payment for a water right, and under the laws of the State of California if water was once furnished to such parties they thereby obtained a perpetual right to the use of water on their lands without payment for such water rights; and,

That until the questions as to the validity of the ordinance and of the right of the plaintiff to charge for a water right

as a condition upon which it would furnish water for purposes of irrigation were determined, the plaintiff could not safely charge for such water rights or collect fair and reasonable rates for water furnished, by reason of which it would be damaged in the sum of twenty thousand dollars.

The relief asked was a decree adjudging that the rates fixed by the defendant city were void; that the constitution and laws of California and the proceedings of the defendant's board of trustees under them were in violation of the Constitution of the United States, and particularly of the first section of the Fourteenth Amendment; and that the taking of the plaintiff's water, without payment for the water right or the right to the use thereof, was in violation of the Bill of Rights of the constitution of California.

The plaintiff also prayed that if the court determined that the state constitution and laws relating to compensation for the use of water for public purposes were valid, then that it be declared by decree that the rates fixed in the ordinance were arbitrary, unreasonable, unjust and void; that the board of trustees be ordered and required to adopt a new and reasonable rate of charges; and that the enforcement of the present ordinance be enjoined.

The plaintiff asked that it be further decreed that it was entitled to charge and collect for water rights at reasonable rates as a condition upon which it would furnish water for the purposes of irrigation, notwithstanding the rates fixed by the trustees for water sold and furnished.

It was denied that the rates fixed by the ordinance in question were unreasonable or unjust, or that the plaintiff could not realize within the city sufficient to pay the just proportion that the city and its inhabitants ought to contribute to the expenses of the plaintiff's system, and as much more as the city and its inhabitants should justly and reasonably pay toward interest and profit on plaintiff's investment as the same existed when the ordinance was enacted. It was alleged that under the annual rates fixed by the ordinance the income of the plaintiff in the city would be about the same as that derived and being derived by it under the ordinance previously in force;

that it was not true that plaintiff could only supply consumers within the city at the rates so fixed at a loss; and that to compel the plaintiff to furnish water at said rates was not a practical confiscation of its property or a taking of it without due process of law.

The defendants admitted that the city was composed in considerable part of a territory of farming lands devoted to the raising of fruits and other products, and that a part thereof was occupied by residences and business houses. But it was averred that the population of the city when the ordinance was adopted was about 1300 persons; that the area within its boundaries laid out in town lots was about 800 acres, divided into 6644 lots, of which the plaintiff in January, 1887, owned 4200; that the land within the boundaries of the city not laid off into town lots comprised about 3500 acres, of which the plaintiff in January, 1888, owned 1289¾ acres; that when the ordinance was passed plaintiff continued to own about 3688 of said lots and about 1184 acres of land; and that the number of acres of farming land not under irrigation in the city at the time when the ordinance was passed was about 610.

It was further stated that since the plaintiff established the rate of $100 per acre for such "perpetual right for the purpose of irrigation" it had in no instance supplied water to any land not already under irrigation except on purchase of said "water right" and payment therefor; and that the rate charged for said "water right" was not reasonable or just, nor necessary to enable plaintiff to keep up and extend its water system, so as to supply water to consumers who required and needed the same.

The defendants insisted that the laws of California did not confer upon the city or its board of trustees the power to prescribe by ordinance or otherwise that the purchase and payment of such "water rights" should be a condition to the exercise of the right of consumers to use any water appropriated for irrigation as already stated, or any water supply affected with the public use; that $4 per acre per annum was not unreasonably low; and that such rate did not require the plaintiff to furnish water to consumers within the city for purposes

of irrigation for less than it furnished the same to consumers outside of the city for the same purposes, or that it could not furnish the same without positive loss to itself.

It was further averred that up to December, 1892, plaintiff by its public representations and continuous practice voluntarily conferred and annexed such perpetual rights to the use of the water on the lands of all persons who requested the same without the payment of any consideration therefor except the annual rate of $3.50 per acre adopted by it under its entire system within and without the city, in addition to charges made for tap connections with its pipe, ranging from $12 to $50 for each such connection; that in December, 1892, it changed its rule and practice, and from that time on until February, 1895, charged and exacted the payment as and for a so-called water right of $50 per acre, and from the latter date $100 per acre, for the privilege of connecting with its system any lands not then already under irrigation from it; and that since December, 1892, it had at all times declined and refused to connect and had not in fact connected any lands with its irrigating system except upon payment made to it of such rates of $50 and $100 per acre respectively for the " water right;" and that whether plaintiff could or could not safely charge for such water rights had been in no way by law committed to said board of trustees to determine.

The cause having been heard upon the pleadings and proofs, the bill was dismissed.   74 Fed. Rep. 79.

*Mr. Charles D. Lanning, Mr. John D. Works, Mr. G. Wiley Wells, Mr. Bradner W. Lee,* and *Mr. Lewis R. Works* for appellant.

*Mr. Daniel M. Hammack* and *Mr. Irvine Dungan* for appellees.

MR. JUSTICE HARLAN, after stating the case as above, delivered the opinion of the court.

While admitting that the power to limit charges for water sold by a corporation like itself has been too often upheld to

be now questioned, the appellant contends that the constitution and statutes of California relating to rates or compensation to be collected for the use of water supplied to a municipality or its inhabitants are inconsistent with the Constitution of the United States. It is said that the state constitution and laws authorized rates to be established without previous notice to the corporation or person immediately interested in the matter, and without hearing in any form, and therefore were repugnant to the clause of the Federal Constitution declaring that no State shall deprive any person of property without due process of law.

Upon the point just stated we are referred to the decision of this court in *Chicago, Milwaukee &c. Railway* v. *Minnesota,* 134 U. S. 418, 452, 456, 457. That case involved the constitutionality of a statute of Minnesota empowering a commission to fix the rates of charges by railroad companies for the transportation of property. The Supreme Court of the State held that it was intended by the statute to make the action of the commission final and conclusive as to rates, and that the railroad companies were not at liberty, in any form or at any time, to question them as being illegal or unreasonable. This court said: "This being the construction of the statute by which we are bound in considering the present case, we are of opinion that, *so construed,* it conflicts with the Constitution of the United States in the particulars complained of by the railroad company. It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation, judicially, of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice." "By the second section of the statute in question it is provided that all charges made by a common carrier for the transportation of passengers or property shall be equal and reasonable. Under this provision the carrier has a right to make equal and reasonable charges for such transportation.

In the present case, the return alleged that the rate of charge fixed by the commission was not equal or reasonable, and the Supreme Court held that the statute deprived the company of the right to show that judicially.   The question of the reasonableness of a rate of charge for transportation by a railroad company, involving, as it does, the element of reasonableness, both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination.   If the company is deprived of the power of charging reasonable rates for the use of its property, and such deprivation takes place in the absence of an investigation by judicial machinery, it is deprived of the lawful use of its property, and thus, in substance and effect, of the property itself, without due process of law, and in violation of the Constitution of the United States; and in so far as it is thus deprived, while other persons are permitted to receive reasonable profits upon their invested capital, the company is deprived of the equal protection of the laws."   Observe that this court based its interpretation of the statute of Minnesota upon the construction given to it by the Supreme Court of that State.

What this court said about the Minnesota statute can have no application to the present case unless it be made to appear that the constitution and laws of California invest the municipal authorities of that State with power to fix water rates arbitrarily, without investigation, and without permitting the corporations or persons affected thereby to make any showing as to rates to be exacted or to be heard at any time or in any way upon the subject.   The contention of appellant is that such is the purpose and necessary effect of the constitution of the State.   We are not at liberty so to interpret that instrument.   What the Supreme Court of California said in *Spring Valley Water Works* v. *San Francisco,* 82 California, 286, 306, 307, 309, 315, upon this subject would seem to be a sufficient answer to the views expressed by the appellant.   In that case it was contended that a board of supervisors had fixed rates arbitrarily, without investigating, without any exercise of judgment or discretion, without any reference to what they should

be, and without reference either to the expense incurred in furnishing water or to what was fair compensation therefor. The court said: "The constitution does not contemplate any such mode of fixing rates. It is not a matter of guesswork or an arbitrary fixing of rates without reference to the rights of the water company or the public. When the constitution provides for the fixing of rates or compensation, it means *reasonable* rates and *just* compensation. To fix *such* rates and compensation is the duty and within the jurisdiction of the board. To fix rates not reasonable or compensation not just, is a plain violation of its duty. But the courts cannot, after the board has fully and fairly investigated and acted, by fixing what it believes to be reasonable rates, step in and say its action shall be set aside and nullified because the courts, upon a similar investigation, have come to a different conclusion as to the reasonableness of the rates fixed. There must be actual fraud in fixing the rates, or they must be so palpably and grossly unreasonable and unjust as to amount to the same thing." "The fact that the right to store and dispose of water is a public use subject to the control of the State, and that its regulation is provided for by the constitution of this State, does not affect the question. Regulation of this State as provided for in the constitution does not mean confiscation or taking without just compensation. If it does, then our constitution is clearly in violation of the Constitution of the United States, which provides that this shall not be done. The ground taken by the appellant is, that the fixing of rates is a *legislative* act; that by the terms of the constitution, the board of supervisors are made a part of the legislative department of the state government and exclusive power given them which cannot be encroached upon by the courts. . . . This court has held that the fixing of water rates is a *legislative* act, at least to the extent that the action of the proper bodies clothed with such power cannot be controlled by writs which can issue only for the purpose of controlling *judicial* action. *Spring Valley Water Works* v. *Bryant*, 52 California, 132; *Spring Valley Water Works* v. *City and County of San Francisco*, 52 California, 111; *Spring Valley Water Works* v. *Bartlett*, 63 Cali-

fornia, 245. There are other cases holding the act to be legislative, but whether it is judicial, legislative or administrative is immaterial. Let it be which it may, it is not above the control of the courts in proper cases. . . . We are not inclined to the doctrine asserted by the appellant in this case, that every subordinate body of officers to whom the legislature delegates what may be regarded as legislative power thereby becomes a part of the legislative branch of the state government and beyond judicial control. In the case of *Davis* v. *Mayor etc. of New York*, 4 Duer, 451, 497, it is further said : '. . . The doctrine, exactly as stated, may be true when applied to the legislature of the State, which, as a coördinate branch of the government representing and exercising in its sphere the sovereignty of the people, is, for political reasons of manifest force, wholly exempt in all its proceedings from any legal process or judicial control; but the doctrine is not nor is any portion of it true when applied to a subordinate municipal body, which, although clothed to some extent with legislative and even political powers, is yet, in the exercise of all its powers, just as subject to the authority and control of courts of justice, to legal process, legal restraint and legal correction, as any other body or person, natural or artificial.' " Again : " On the part of the respondent it is contended, in support of the decision of the court below, that notice to the plaintiff of an intention to fix the rates was necessary, and that without such notice being given, the action of the board was a taking of its property without due process of law. But the constitution is self-executing, and as it does not require notice, we think no notice was necessary. It does not follow, however, that because no notice is necessary, the board are for that reason excused from applying to corporations or individuals interested to obtain all information necessary to enable it to act intelligibly and fairly in fixing the rates. This is its plain duty, and a failure to make the proper effort to procure all necessary information from whatever source may defeat its action."

In the more recent case of *San Diego Water Co.* v. *San Diego*, 118 California, 556, 566, the state court, referring to

section 1 of the constitution of California, said that the meaning ,of that section was that "the governing body of the municipality, upon a fair investigation, and with the exercise of judgment and discretion, shall fix reasonable rates and allow just compensation. If they attempt to act arbitrarily, without investigation, or without the exercise of judgment and discretion, or if they fix rates so palpably unreasonable and unjust as to amount to arbitrary action, they violate their duty and go beyond the powers conferred upon them. Such was the conclusion reached by this court in *Spring Valley Water Works* v. *San Francisco*, 82 California, 285, to which conclusion we adhere. Although that case was decided without the light cast on the subject by later decisions of the Supreme Court of the United States, and contains some observations that perhaps require modification, we are satisfied with the correctness of the conclusion [construction] there given to this section of the constitution."

Was the appellant entitled to formal notice as to the precise day upon which the water rates would be fixed by ordinance? We think not. The constitution itself was notice of the fact that ordinances or resolutions fixing rates would be passed annually in the month of February in each year and would take effect on the first day of July thereafter. It was made by statute the duty of the appellee at least thirty days prior to the 15th day of January in each year to obtain from the appellant a detailed statement, showing the names of water rate payers, the amount paid by each during the preceding year, and "all revenue derived from all sources," and the "expenditures made for supplying water during said time." It was the right and duty of appellant in January of each month to make a detailed statement, under oath, showing every fact necessary to a proper conclusion as to the rates that should be allowed by ordinance. Act of March 7, 1881, § 2, above cited. Provision was thus made for a hearing in an appropriate way. The defendant's board could not have refused to receive the statement referred to in the statute, or to have duly considered it and given it proper weight in determining rates. If the State by its constitution

or laws had forbidden the city or its board to receive and consider any statement or showing made by the appellant touching the subject of rates, a different question would have arisen. But no such case is now presented. In *Kentucky Railroad Tax cases,* 115 U. S. 321, 333, it was said: "This return made by the corporation through its officers, is the statement of its own case, in all the particulars that enter into the question of the value of its taxable property, and may be verified and fortified by such explanations and proofs as it may see fit to insert. It is laid by the auditor of public accounts before the board of railroad commissioners, and constitutes the matter on which they are to act. They are required to meet for that purpose on the first day of September of each year at the office of the auditor at the seat of government. . . . These meetings are public and not secret. The time and place for holding them are fixed by law."

There is no ground to say that the appellant did not in fact have or was denied an opportunity to be heard upon the question of rates. On the contrary, it appears in evidence that the subject of rates was considered in conferences between the local authorities and the officers of the appellant. Those officers may not have been present at the final meeting of the city board when the ordinance complained of was passed. They were not entitled, of right, to be present at that particular meeting. They were heard, and there is nothing to justify the conclusion that the case of the appellant was not fully considered before the ordinance was passed.

That it was competent for the State of California to declare that the use of all water appropriated for sale, rental or distribution should be a public use and subject to public regulation and control, and that it could confer upon the proper municipal corporation power to fix the rates of compensation to be collected for the use of water supplied to any city, county or town or to the inhabitants thereof, is not disputed, and is not, as we think, to be doubted. It is equally clear that this power could not be exercised arbitrarily and without reference to what was just and reasonable as between the public and those who appropriated water and supplied it for

general use; for the State cannot by any of its agencies, legislative, executive or judicial, withhold from the owners of private property just compensation for its use. That would be a deprivation of property without due process of law. *Chicago, Burlington &c. Railroad* v. *Chicago*, 166 U. S. 226; *Smyth* v. *Ames*, 169 U. S. 466, 524. But it should also be remembered that the judiciary ought not to interfere with the collection of rates established under legislative sanction unless they are so plainly and palpably unreasonable as to make their enforcement equivalent to the taking of property for public use without such compensation as under all the circumstances is just both to the owner and to the public; that is, judicial interference should never occur unless the case presents, clearly and beyond all doubt, such a flagrant attack upon the rights of property under the guise of regulations as to compel the court to say that the rates prescribed will necessarily have the effect to deny just compensation for private property taken for the public use. *Chicago & Grand Trunk Railway* v. *Wellman*, 143 U. S. 339, 344; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 399; *Smyth* v. *Ames*, above cited. See also *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592, 614, 615.

In view of these principles, can it be said that the rates in question are so unreasonable as to call for judicial interference in behalf of the appellant? Such a question is always an embarrassing one to a judicial tribunal, because it is primarily for the determination of the legislature or of some public agency designated by it. But when it is alleged that a state enactment invades or destroys rights secured by the Constitution of the United States a judicial question arises, and the courts, Federal and state, must meet the issue, taking care always not to entrench upon the authority belonging to a different department, nor to disregard a statute unless it be unmistakably repugnant to the fundamental law.

What elements are involved in the general inquiry as to the reasonableness of rates established by law for the use of property by the public? This question received much consideration in *Smyth* v. *Ames*, above cited. That case, it is

true, related to rates established by a statute of Nebraska for railroad companies doing business in that State. But the principles involved in such a case are applicable to the present case. It was there contended that a railroad company was entitled to exact such charges for transportation as would enable it at all times, not only to pay operating expenses, but to meet the interest regularly accruing upon all its outstanding obligations and justify a dividend upon all its stock; and that to prohibit it from maintaining rates or charges for transportation adequate to *all* those ends would be a deprivation of property without due process of law, and a denial of the equal protection of the laws. After observing that this broad proposition involved a misconception of the relations between the public and a railroad corporation, that such a corporation was created for public purposes and performed a function of the State, and that its right to exercise the power of eminent domain and to charge tolls was given primarily for the benefit of the public, this court said: "It cannot, therefore, be admitted that a railroad corporation maintaining a highway under the authority of the State may fix its rates with a view solely to its own interests, and ignore the rights of the public. But the rights of the public would be ignored if rates for the transportation of persons or property on a railroad are exacted without reference to the fair value of the property used for the public or the fair value of the services rendered, but in order simply that the corporation may meet operating expenses, pay the interest on its obligations, and declare a dividend to stockholders. If a railroad corporation has bonded its property for an amount that exceeds its fair value, or if its capitalization is largely fictitious, it may not impose upon the public the burden of such increased rates as may be required for the purpose of realizing profits upon such excessive valuation or fictitious capitalization; and the apparent value of the property and franchises used by the corporation, as represented by its stocks, bonds and obligations, is not alone to be considered when determining the rates that may be reasonably charged." 169 U. S. 544. In the same case it was also said that "the

basis of all calculation as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property used by it for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth." 169 U. S. 466, 546.

This court had previously held in *Covington & Lexington Turnpike Road Company* v. *Sandford*, 164 U. S. 578, 597, 598 — which case involved the reasonableness of rates established by legislative enactment for a turnpike company — that a corporation performing public services was not entitled, as of right and without reference to the interests of the public, to realize a given per cent upon its capital stock; that stockholders were not the only persons whose rights or interests were to be considered; and that the rights of the public were not to be ignored. The court in that case further said: "Each case must depend upon its special facts; and when a court, without assuming itself to prescribe rates, is required to determine whether the rates prescribed by the legislature for a corporation controlling a public highway are, as an entirety, so unjust as to destroy the value of its property for all the purposes for which it was acquired, its duty is to take into consideration the interests both of the public and of the owner of the property, together with all other

circumstances that are fairly to be considered in determining whether the legislature has, under the guise of regulating rates, exceeded its constitutional authority, and practically deprived the owner of property without due process of law. . . . The utmost that any corporation operating a public highway can rightfully demand at the hands of the legislature, when exerting its general powers, is that it receives what under all the circumstances is such compensation for the use of its property as will be just both to it and to the public."

These principles are recognized in recent decisions of the Supreme Court of California. *San Diego Water Co.* v. *San Diego,* (1897) 118 California, 556; *Redlands' Domestic Water Co.* v. *Redlands,* (1898) 53 Pac. Rep. 843, 844.

The contention of the appellant in the present case is that in ascertaining what are just rates the court should take into consideration the cost of its plant; the cost per annum of operating the plant, including interest paid on money borrowed and reasonably necessary to be used in constructing the same; the annual depreciation of the plant from natural causes resulting from its use; and a fair profit to the company over and above such charges for its services in supplying the water to consumers, either by way of interest on the money it has expended for the public use, or upon some other fair and equitable basis. Undoubtedly, all these matters ought to be taken into consideration, and such weight be given them, when rates are being fixed, as under all the circumstances will be just to the company and to the public. The basis of calculation suggested by the appellant is, however, defective in not requiring the real value of the property and the fair value in themselves of the services rendered to be taken into consideration. What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public. The property may have cost more than it ought to have cost, and its outstanding bonds for money borrowed and which went into the plant may be in excess of the real value of the property. So that

it cannot be said that the amount of such bonds should in every case control the question of rates, although it may be an element in the inquiry as to what is, all the circumstances considered, just both to the company and to the public.

One of the points in dispute involves the question whether the losses to the appellant arising from the distribution of water to consumers *outside of the city* are to be considered in fixing the rates for consumers within the city. In our judgment the Circuit Court properly held that the defendant city was not required to adjust rates for water furnished to it and to its inhabitants so as to compensate the plaintiff for any such losses. This is so clear that we deem it unnecessary to do more than to state the conclusion reached by us on this point.

One of the questions pressed upon our consideration is whether the ordinance of the city should have expressly allowed the appellant to charge for what is called a "water right." That right, as defined by appellant's counsel, is one "to the continued and perpetual use of the water upon the land to which it has been once supplied upon payment of rates therefor established by the company." In the opinion of the Circuit Court it is said that "no authority can anywhere be found for any charge for the so-called water right." This view is controverted by appellant, and cases are cited which, it is contended, show that the broad declaration of the Circuit Court cannot be sustained. *Fresno Canal & Irrigation Co.* v. *Rowell*, 80 California, 114; *Same* v. *Dunbar*, 80 California, 530; *San Diego Flume Co.* v. *Chase*, 87 California, 561; *Clyne* v. *Benicia Water Co.*, 100 California, 310; *San Diego Flume Co.* v. *Souther*, 90 Fed. Rep. 164.

We are of opinion that it is not necessary to the determination of the present case that this question should be decided. We are dealing here with an ordinance fixing rates or compensation to be collected within a given year for the use of water supplied to a city and its inhabitants or to any corporation, company or person doing business or using water within the limits of that city. In our judgment, the defendant correctly says in its answer that the laws of the State

have not conferred upon it or its board of trustees the power to prescribe by ordinance or otherwise that the purchase and payment for so-called "water rights" should be a condition to the exercise of the right of consumers to use any water appropriated for irrigation or affected with a public use.

The only issue properly to be determined by a final decree in this cause is whether the ordinance in question, fixing rates for water supplied for use within the city, is to be stricken down as confiscatory by its necessary operation, and therefore in violation of the Constitution of the United States. If the ordinance, considered in itself, and as applicable to water used within the city, is not open to any such objection, that disposes of the case, so far as any rights of the appellant may be affected by the action of the defendant. The appellant asks, among other things, that it be decreed to be entitled to charge and collect for "water rights" at reasonable rates *as a condition* upon which it will furnish water for the purposes of irrigation, notwithstanding the rates fixed by the defendant's board of trustees for water sold and furnished within the city. That is a question wholly apart from the inquiry as to the validity under the Constitution of the United States of the ordinance of the defendant fixing annual rates in performance of the duty enjoined upon it by the constitution and laws of the State. Counsel for appellant, while insisting that the Circuit Court erred in saying that there was no such thing as a "water right," says: "The constitution of the State has nothing whatever to do with a water right or the price that shall be paid for it. It simply provides for fixing the *annual rental* to be paid for the water furnished and used. When one obtains his water right by purchase or otherwise, he has a right to demand that the water shall be furnished to his lands at the price fixed, as provided by law, and that the company shall exact no more. But he must first acquire the right to have the water on such terms. Whether in fixing the annual rates to be charged, the body authorized to fix them can take into account the amount that has been received by the company for water rights, is another question, and one that is not presented in this case. Nor is any question raised

as to what would be a reasonable amount to exact for a water right, or whether the courts can interfere to determine what is a reasonable amount to charge therefor."

These reasons are sufficient to sustain the conclusion already announced, namely, that the present case does not require or admit of a decree declaring that the appellant may, in addition to the rates established by the ordinance, charge for what is called a "water right" as defined by it. It will be time enough to decide .such a point when a case actually arises between the appellant and some person or corporation involving the question whether the former may require, as a condition of its furnishing water within the limits of the city on the terms prescribed by the defendant's ordinance, that it be also paid for what is called a " water right."

We will not extend this opinion by an analysis of all the evidence. It is sufficient to say that upon a careful scrutiny of the testimony our conclusion is that no case is made that will authorize a decree declaring that the rates fixed by the defendant's ordinance, looking at them in their entirety — and we cannot properly look at them in any other light — are such as amount to a taking of property without just compensation, and therefore to a deprivation of property without due process of law. There is evidence both ways. But we do not think that we are warranted in holding that the rules upon which the defendant's board proceeded were in disregard of the principles heretofore announced by this court in the cases cited. The case is not one for judicial interference with the action of the local authorities to whom the question of rates was committed by the State.

The decree dismissing the bill is

*Affirmed.*