Matthias, J.
The defendant in error seeks to have stricken from the printed record all of the so-called “Exhibit AA,” excepting exhibits thereto attached, upon the claim that the same is not a part of the bill of exceptions taken in the court of appeals and filed in this court. The matter which defendant in error contends is not properly a part of the record and, therefore, should not be considered by the court, embraces all the evidence offered by the plaintiff in error in the hearing of this case in the court of common pleas. The record *397 shows that defendant in error introduced and read in evidence all the evidence given in its behalf on the trial in the court of common pleas, and that the plaintiff in error then offered and read in evidence all the evidence offered by it in the trial in the court of common pleas, and then follows the statement: “A full and complete transcript of verbatim stenographic notes of said testimony and evidence given on the trial in the court of common pleas is hereto attached, marked ‘AA’ and made part hereof.” In this manner all the evidence given in the lower court is brought into the record in the court of appeals, and by attachment and reference, as above indicated, was made a part of the bill of exceptions by the judges of that court. The record before us shows that counsel for plaintiff in error was allowed by the court of appeals to reserve exceptions to the exclusion of certain evidence sought to be introduced in the court of common pleas. It thus appears that, probably for the purpose of convenience and economy of time, the evidence was placed before the court of appeals in such manner. No objection to this practice is disclosed by the record, and we conclude that only in the instance above stated was exception noted in the court of appeals to the ruling of the court upon the introduction of evidence, and that otherwise the record, as made in the common pleas court, was submitted to and received by the court of appeals in lieu of again calling the witnesses. Under such circumstances this court will consider the evidence thus brought into the record, although in accordance with the decision of Dunn *398 v. The State, 23 Ohio St., 167, statements in such exhibit purporting to recite rulings of the trial court admitting or excluding evidence, cannot be considered.
The ordinance of the city of Newark, the validity of which is questioned, was passed by virtue of the power conferred by Section 3982, General Code, which authorizes the council of a municipality to “regulate from time to time the price which such companies may charge * * * for gas for lighting or fuel purposes;” and further provides that such companies shall in no event charge more than the price specified by the ordinance of council. It is admitted that said ordinance was passed in due form by the council of the city of Newark, and the only issue presented arises from the contention of the plaintiff in error that the rate prescribed by such ordinance is unreasonable and if enforced will result in confiscation of its property.
The Newark Natural Gas & Fuel Company was organized in 1889, and in 1898 was granted a twenty-five-year franchise by. said city. For several years it was both a producing and distributing company, but for the past ten or twelve years it has been a distributing company only, and since 1904 has procured its supply of gas from The Logan Natural Gas & Fuel Company on a percentage basis, under a contract between said companies which expired March 1, 1913. Although the previous ordinance permitted a net rate of twenty-five cents, the eighteen-cent rate was voluntarily *399 adopted by the plaintiff in error sometime prior to the adoption of the ordinance now in question. Plaintiff in error now contends that such reduction was made because of the development of a near-by field, greatly augmenting the supply of gas, but which is now materially reduced.
It is urged by the plaintiff in error that this case differs greatly from many of the adjudicated cases of this character, by reason of the fact that two companies are necessarily affected by the rate, the producing company and the distributing company, and that in the determination of the fairness and reasonableness of the prescribed rate it becomes necessary to consider not only the cost of procuring and distributing gas but also the cost of its production.
However, the facts and the conditions which may properly be considered, as well as the test to be applied thereto by the courts for the purpose of determining every question in controversy in this action, are well settled and have been clearly and concisely announced in what must be regarded as leading cases of the class to which this proceeding belongs. We direct particular attention to the decision of the supreme court of the United States in the case of the City of Knoxville v. Knoxville Water Co., 212 U. S., 1, and Willcox et al. v. Consolidated Gas Co., 212 U. S., 19. In the former case it is held that “Rate making is a legislative function whether exercised by the legislature or by a subordinate body to which power has been delegated, such as a municipality.
*400 “While courts may refuse to enforce legislation on constitutional ground the power should only be exercised in the clearest cases.”
This action of the city, having been taken pursuant to legislative authority, is a proper exercise of legislative power, and, therefore, the company assailing the rates fixed in such manner must show that their enforcement will result in the taking of its property without just compensation. The Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234.
In Willcox v. Consolidated Gas Co., supra, the rule to be applied in cases of this character for the purpose of ascertaining whether a prescribed rate is unreasonable, is concisely stated. It is there held that “Rates, when fixed by legislative authority, for public service corporations, should allow a fair return upon the reasonable value of the property . at the time it is being used, but the legislative act will not be declared invalid by the courts unless the rates are so unreasonably low that their enforcement would amount to taking the property for public use without compensation.”
Upon the hearing in the court of appeals a very large volume of evidence was introduced tending to show the value of the plant of the Newark Gas Company and the net profits that would be realized under existing conditions at the price fixed. From these factors it was ascertained that the net profits were sufficient to provide the company a fair and just return upon the value of its property. It would not be profitable here to review in detail the large volume of data presented or discuss the various opinions of the several experts who testi *401 fled upon the trial of the case. Our only duty is to ascertain whether the conclusion reached by the court of appeals is the correct one. From the record before us it is apparent that if computation be based upon the highest valuation of the complaining company’s plant fixed by any witness, a net profit of ten per cent, would be realized by the company. On the valuation of another witness called by plaintiff in error the rate now complained of yielded in 1911 a net profit of approximately seventeen per cent. In some of these estimates elements were included which should not enter into the calculation. For instance, one expert, upon whose evidence plaintiff in error placed great reliance, and apparently a man of skill and experience in his profession, based his estimate of the value of said plant on the cost of building a competing plant on the same streets and included an item of $33,379 for “pavement over mains,” notwithstanding the record shows that there was no street paving over the mains when the pipes were originally laid. We refer to this instance as illustrative merely and to show the care that must be exercised in following the estimates of the valuation of property of such character.
When property is devoted to a use in which the public has an interest the public is thereby granted an interest in such business and it is subject to control for the common good. Such company is entitled, therefore, only to a fair return on the value of that which is employed for the public convenience (Munn v. Illinois, 94 U. S., 113; San Diego Land & Town Co. v. National City, 174 U. S., *402 739), and such return should be based upon the reasonable value of the property at the time it is being used by the public. Willcox v. Consolidated Gas Co., supra.
In the calculations above referred to no deduction was made for depreciation of the plant, and the evidence shows that five per cent, a year would be a fair estimate for that item. When the value of property of such character rests so largely upon opinion evidence, the fact that the company, prior to the passage of the ordinance in question, had voluntarily reduced its rate to that specified in the ordinance thereafter passed and maintained the same for several years immediately preceding the passage of such ordinance, may be controlling and fully justify the conclusion that such rate is remunerative.
It may be fairly assumed that rates voluntarily made by the company return not only a fair but adequate compensation, especially in the absence of evidence showing any actual increase of expense or cost of furnishing gas to the Newark patrons. No evidence was offered showing what the Newark company paid the Logan company for gas subsequent to March 1, 1913, although the opportunity was afforded the Newark company to produce such evidence as late as September 26, 1914. The court should not be asked to indulge in mere speculation and arrive at a conclusion based only upon various and varying opinions of experts, which opinions are apparently based upon conditions which are themselves admittedly varying and uncertain. The records of the company showing its net earnings *403 subsequent to 1911 should have been disclosed and all information available placed before the court that would tend to show that the rate fixed is unreasonable. Sufficient time had elapsed to enable the company to place before the court actual facts showing the effect of operation on its plant and the furnishing of gas upon the terms prescribed by this ordinance. The burden is upon the company to show the court that the price fixed is unreasonable, not merely that there is a possibility or probability that it will become so. If there was a change in the price required by the producing company, such evidence should be in the record. Evidence of conditions, not only when the ordinance was passed, but subsequent thereto, was admissible and would have been most helpful to the court in solving the problem presented in a controversy of this character. City of Knoxville v. Knoxville Water Co., supra.
We find in the record no possible basis for the claim that the rate fixed by this ordinance does not yield a fair and just compensation to the plaintiff in error under the conditions obtaining in 1911. The following cases deal instructively with the question of what is adequate compensation: Lincoln Gas & Elec. Light Co. v. Lincoln, 182 Fed. Rep., 926; Willcox v. Consolidated Gas Co., supra, and Cedar Rapids Water Co. v. Cedar Rapids, supra.
However, it is urged by plaintiff in error that in view of the fact that it is now a distributing company only and procures its supply of gas of a producing company, and that its contract with such- *404 company for gas delivered to its lines, upon a percentage basis of meter readings, would expire two years after the passage of said ordinance and three years before the end of the period covered thereby, a proper rate cannot be ascertained without inquiry and determination of the cost of producing gas and transporting it to the lines of the plaintiff in error. Upon this theory much evidence was adduced tending to show that the Logan company, with which the plaintiff in error has a contract for its supply of gas, for various reasons, cannot furnish its product in the future on the terms of its former contract, and included evidence of the value of the plant of the Logan company and computations to ascertain what rate would insure it a fair compensation for its share of the service rendered.
An excursion into a vast field, thus invited, may have been justified under some circumstances, but surely not under the conditions disclosed by this record. In the absence of evidence to the contrary, the court was justified in assuming that the contract price for gas remained the same and need not anticipate a condition which might or might not obtain in the future.
The rule that should guide judicial review of rate-making legislation is thus stated in 3 Dillon on Municipal Corporations (5 ed.), Sec. 1327, p. 2251: “The judiciary ought not to annul or set aside rates established by legislative sanction unless they are proved or shown to be such as to make their enforcement equivalent to the taking of property for public use without such compensation as, under all the circumstances, is just both to the *405 owner and to the public; that is, judicial interference should not occur unless the case presents clearly such a violation of the rights of property under the form of regulation as to satisfy the court that the rates prescribed will have the effect to deny to the company reasonable compensation for its services.”
The evidence disclosed in the record does not show that the rates fixed by this ordinance will result in a violation of the rights of property of the plaintiff in error or that it will have the effect to deprive it of reasonable compensation for its services, and, therefore, fails to establish a present right of plaintiff in error to exemption from compliance with'the terms of said ordinance. Said company will, therefore, be required tó abide the test of actual experience under the rate fixed by this ordinance, and when certainty rather than prophecy may be obtained, it will have the right to present its case upon actual facts and conditions as they may then be shown to exist.
It follows that the judgment of the court of appeals is affirmed.

Judgment affirmed.

Johnson, Donahue, Wanamaker, Newman and Jones, JJ., concur.