### MOORE & HILL, Inc., v. MARSHALL.

(Court of Appeals of District of Columbia. Submitted November 2, 1922. Decided February 5, 1923.)

No. 3822.

1. Landlord and tenant ⬤⟿200(1½)—Evidence held not to show that rent fixed by commission was confiscatory.

In proceedings before the rent commission to fix the rental value of the premises, evidence as to the reproduction cost of the building, with depreciation, and as to the income and operating expenses of the building for the year 1920 only, *held* insufficient to show that the rent as fixed by the rent commission would yield less than 6 per cent. on the investment, so as to be confiscatory.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Landlord and tenant ☞200(1½)—Burden is on landlord to show value of property and rent fixed by commission confiscatory.**

On a landlord's appeal from a judgment of the rent commission fixing the rent of an apartment, the burden is on him to show the fair value of the property at the time in controversy, and that the rent as fixed by the commission is confiscatory.

Appeal from the Rent Commission.

Proceeding by B. W. Marshall against Moore & Hill, Inc., before the Rent Commission, to have the rent of an apartment fixed. From the order of the Commission, fixing the rent, defendant appeals. Affirmed.

J. I. Peyser and G. E. Edelin, both of Washington, D. C., for appellant.

Allen MacCullen, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal from the judgment of the rent commission, filed March 31, 1922, fixing the rent of apartment 52 of the Champlain Apartments, at 1424 K Street, Northwest, Washington, D. C., occupied by the appellee, Marshall, at $100 per month. The complaint was filed with the commission October 19, 1921, and was heard March 16, 1922.

At the close of the testimony on behalf of the complainant, the defendant moved to dismiss the complaint, which motion was overruled. The defendant then proceeded to introduce testimony in its behalf. While the assignments of error present the question arising on the overruling of the motion to dismiss, and the same is discussed in appellant's brief, it is expressly waived on argument in this court. The only claim made is that the rent fixed by the commission is confiscatory.

[1] The complainant testified that the apartment consisted of five rooms and bath, located on the fifth floor front; that he had been a tenant thereof for the past five years; that the rental he first paid therefor was $60 per month, which had, from time to time, been raised until, for the year ending October 1, 1920, it was $75, and after that $120, per month; that the Champlain apartment house had been sold a great many times; that before Wardman sold it, the service was excellent; that since Moore & Hill have had it in charge the service had not been as good as when the rents were lower and gave further testimony as to the location, occupancy, condition, and service, not important to mention. He did not qualify as a land or realty expert, although he gave it as his opinion that a rental of $120 per month was unfair and unreasonable.

Mr. Ray, a designer of apartment houses and other buildings in the District of Columbia, and who had superintended their construction, testified on behalf of the defendant that in his opinion to now reproduce the Champlain apartment house would cost not less than 60 cents per cubic foot; that the depreciation and obsolescence thereof would be

about 1½ to 2 per cent. per annum; that, generally speaking, the life of an apartment house is about 40 years, and the depreciation is 2½ per cent. per annum.

Mr. Hedge, who had been in the real estate business in the city of Washington for a number of years, and had for about 9 months had charge of the Champlain apartment house, testified in behalf of defendant that the building was erected 16 years ago; that there were in the same 144 rooms for rental purposes, exclusive of baths; that it contained 540,248 cubic feet, which, at the rate of 60 cents per cubic foot, would amount to $324,148; that the value of the land on which the building stood was about $124,757.50, making the total value of the property (or capital invested) $448,906.33; that it was a fireproof structure, with appropriate conveniences, and kept in substantially perfect repair; that for the year ending December 31, 1920, the receipts by way of rents from said building were $38,981.22; that for the same period the cost of upkeep and operating expenses, not including anything for depreciation or obsolescence, but including repairs, supplies, janitor services, fuel, taxes, legal services, commissions for collecting rents, and other expenses, were $13,656.26, leaving a profit to the owner, exclusive of depreciation, of $25,324.96 for that year. He further testified that the rent of $120 per month then being charged for apartment 52 was at the rate of $24 per room per month, at which rate the 144 rooms in the apartments (no charge appearing to be made for bathrooms) would, if all the rooms were continuously rented (in which case the upkeep and operation would be greater), produce a gross annual income of $41,472; that if, assuming the annual cost of upkeep and operation to be as above shown, $13,656.26, the sum of $3,500 be allowed for depreciation and obsolescence, the total annual expense would be $17,156.25, which, to use the language of the witness, would be "about 6 per cent. on the estimated present market value of the property"; and that the apartment in question was rather above than below the average.

It also appeared that the rent commission had fixed the rentals on four other apartments in the building, and no appeal had been taken from its determination by the owner of the house. It did not appear how the four apartments compared with No. 52 in any respect. It appears from the testimony of Marshall that the building has been sold a great many times, and that the service is not as good as before Wardman sold it. This indicates that Moore & Hill, Inc., or whomever they may represent, if they do not own it, have acquired the property within 5 years, because that is the limit of appellee's tenancy.

Evidence as to its then selling price, while not conclusive, might have been helpful on the question of its present fair value. Other than as hereinbefore stated there was no evidence whatever to show the original cost or present value of the property, or the rents received therefrom.

Upon these facts, the only question presented for consideration is whether the rental fixed on apartment 52 is so low as to justify this court to hold the same to be confiscatory. Following Karrick et al. v. Cantrill et al., 51 App. D. C. 176, 277 Fed. 578, we hold that, if the

net income from the rental, above the ordinary expenses, falls below 6 per cent. per annum of the value of the leased property, it should be treated as confiscatory.

Among other things, not necessary to be recited here, the appellant argues that to the expense of operation of the entire property, $13,656.-26, there should be added a depreciation charge of $6,482.96, the same being 2 per cent. of the reproduction cost of $324,148, which would make the total sum of $20,139.22, which the building should earn before it could be claimed there was any net return thereon, and then apportions to apartment No. 52 $5/144$ of this expense, at $699.25, which sum, deducted from the rental allowed by the commission, $1,200, leaves the sum of $500.75 as the net income of the apartment in question. Then, assuming that $5/144$ of the claimed value of the entire property, $448,906.33, is the value of apartment 52, which is $15,587, it argues that $500.75 is only a little over 3 per cent. per annum thereon.

We cannot agree that the evidence justifies this claim. The hearing, as already stated, before the commission, was March 16, 1922. The only evidence as to income received from and expense of maintenance of the property was for the year ending December 31, 1920. Whether as to expenses this was a typical year is not shown, but is left to inference; neither does it appear whether or not all the rooms in the apartment house were rented during that period, nor the rent received for any apartment other than No. 52, which, as already appears from the evidence of the complaint, was at the rate of $75 a month to October 1st of that year. There is no evidence, other than its present reproduction cost, as to the fair value of the building, and there is no finding by the rent commission as to such value.

As pointed out by this court in the Karrick Case, supra, the present cost of reproduction of a building, unless practically new, does not afford a sufficient basis upon which to fix its present value, and should not be employed. In San Diego Land Co. v. National City, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154, the factors to be used in ascertaining fair value are considered, and the case may be referred to. Suffice it to say that in the case at bar the appellant failed to present such facts as enable us to reach any definite conclusion as to the fair value of the property.

Assuming 60 cents per cubic foot to be the present cost of reproduction, it is fair to assume that in all probability, in view of the well-known increased costs of labor and materials in the interim, it did not cost that amount 16 years ago. Whatever it cost, however, its value has in the meantime been diminished about 32 per cent. which, assuming its original cost was 60 cents per cubic foot, reduces its value at the present time to some $210,420, and if it cost less than that to build, manifestly, by the same token, its present value would be a still smaller sum.

On the question of fair value it is significant that the defendant's witness Hedge spoke of $3,500 as an annual allowance for depreciation and obsolescence, and testified that $17,156.26 was about 6 per cent. on the estimated market value of the property. From these figures it is apparent that the witness must have had in mind that its present

286 F.—63

market value was somewhere from $285,937 to $300,000. Upon the basis of the smaller amount, assuming the expenses for the year 1920 to be reasonable, the net receipts, after deducting therefrom $3,500 for depreciation, would yield considerably more than 6 per cent. net income, while, if it be assumed that the rate of $20 per month per room represents the gross rental (equaling $34,560 for the year), assuming the same depreciation and operating expenses, there would still be a net annual income of at least 6 per cent. on $285,937.

These figures are not referred to as *establishing* the fair value of the property, but rather as inferences proper to be drawn from the appellant's evidence, and as showing that upon the record it is impossible to say that the fair value thereof was such that the rent fixed by the rent commission on the apartment in question was confiscatory.

[2] The law is well established in cases of this character that the fair value of the property at the time of fixing the rent or rate must be ascertained, and that it then must appear to be reasonably free from doubt that such rate or rental is confiscatory. Karrick & Pilling, Appellants, v. Cantrill et al., Appellees, supra; San Diego Land Co. v. National City, supra; Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034; Knoxville v. Water Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

The burden is upon the appellant to show by the record the existence of both these basic facts. He has failed so to do, and the judgment of the rent commission is therefore affirmed, with costs.