## L. R. & F. S. R. R. Co. v. Payne.

WITNESSES: *Husband and wife, incompetent.*

Husband and wife are not competent witnesses for or against each other.

EVIDENCE: *Legislative power over.*

The Legislature has no power to divest rights by prescribing to the courts. what shall be *conclusive* evidence.

RAILROADS: *Damages by ; Statute construed.*

The true construction of the Act of February 3, 1875, for the recovery of dam-. ages for injuries by railroads, is, that the killing being shown or admitted, the presumption is that it was done by the train and resulted from want of due care ; but this presumption may be repelled by proof. And in case the company may be liable at all, that liability is doubled by the failure to give notice of the injury required by the statute; but the failure to give notice. does not create a liability for an innocent act.

APPEAL from *Johnson* Circuit Court.

Hon. W. W. Mansfield, Circuit Judge.

*Clark & Williams* for appellant.

*Ford, contra.*

Eakin, J. :

Payne sued the railroad company before a justice of the peace, for damages resulting from breaking the leg of a horse and injuring him permanently—claiming $150. He recovered $100, and the road appealed to the Circuit Court, where, upon trial, the jury rendered a verdict against defendant for $200,

L. R. & F. S. R. R. Co. vs. Payne.

upon which judgment was entered. There was a motion for a new trial overruled, bill of exceptions and appeal.

There was a direct conflict of evidence as to the cause of the injury. Some witnesses testified that the train had run upon the horse and pushed him into a culvert; others swore roundly and directly that the train did not come within four feet of the horse, but stopped before it reached the culvert, and that the horse, which had been running along the track before the engine, jumped into the culvert and was injured. Amongst the witnesses for plaintiff who testified upon this point, was his wife. Her testimony was admitted against the objections of appellant, which makes this one of the grounds of its motion for a new trial.

This was erroneous. Husband and wife are prohibited, from motives of public policy, from testifying for or against each other. *Collins* v. *Mack*, 31 Ark., 684. The evidence of the wife was material and may have influenced the jury in arriving at their verdict.

It is urged upon the court to rule, in this case, upon other points made by the record, involving the construction and validity of the act of February 3, 1875, entitled, "An act requiring railroad companies to pay for damages to persons and property, and for other purposes."

The court, upon motion of plaintiff, and against the objections of defendant, gave, amongst others, the following instruction: "If the jury believe, from the evidence, that the defendant's engine, or cars, ran over or against the horse, mentioned in the complaint, and that the animal died from wounds or injuries thus received, they should find for the plaintiff and assess his damages at a sum equal to the actual value of the horse on the day he was injured, together with six per cent interest thereon from that until the present day. But, if the jury find for the plaintiff, and also find that the

51

·engineer, or conductor on the train, doing such injury, knew that the same was done, and failed within one week thereafter to cause to be posted, by the station master, or overseer at the nearest station-house, and at the nearest station-house and depot house, a correct description of said horse, including his color, marks, brands, and such other natural description as might have assisted in identifying said horse ; and also a notice of the time and place where said horse was injured, and to keep such notice and description so posted for twenty days thereafter ; then they should assess the damages of the plaintiff at double the actual value of said horse.''

The following, in effect, amongst others asked on the part of the defendant, were refused :

3. That the jury must not only find that the injury was inflicted by the train, but that it was done through the want of due care and skill or diligence on the part of defendant's agents, or employees, or some of them in charge of the train.

4. That the company was not liable for injury to animals running at large in the range, and straying upon its track, where the company and its agents use due caution and reasonable care and diligence to avoid said injury.

5. That the *onus probandi* was on the plaintiff, notwithstanding the eighth section of the statute.

6. That the company could not be made liable under the Constitution and laws of the State for double damages, as provided by the second section of the statute.

There were other instructions, principally regarding the weight of evidence and the duties of the jury with reference to the conflict therein—which, on the whole, were well given, and need not be noticed.

The statute referred to provides, by section 1, that ''all railroads, which are now, or may be hereafter built and operated, in whole or in part in this State, shall be responsible

for all damages to persons and property done or caused by the running of trains in this State.''

The second section makes it the duty of the conductor or engineer, when stock of any sort are killed, to make the advertisement, indicated in the instruction for plaintiff, and provides that ''on failure to so advertise any stock so killed or wounded, that the owner shall recover double damages for all stock so killed and not advertised.''

The fifth section provides a mode of arbitration between the company and the injured party.

The eighth section provides that ''the killing of stock on any railroad track shall be *prima facie* evidence that it was done by the trains, and the *onus* to prove the reverse will be on the railroad company.''

There are other sections not bearing upon the points at issue.

The court below construed the first section of the act as imposing upon the road an absolute liability to pay for stock killed by the trains, and withdrew from the consideration of the jury all considerations of negligence on the one hand or due care on the other. This would be to make the railroad companies insurers of the safety of all the live animals in the State against injury from their roads, and would either take away from them defenses, which all other corporations and persons might by law set up, or make the killing of stock conclusive evidence of want of due care, and negligence. In the absence of express language we cannot suppose that the Legislature intended either. Railroads are useful to all the community, in the development of the resources and increase of the wealth of the State. The exercise of their franchises, and the pursuit of their business, is lawful, and to hold them liable for unavoidable accidents which could not have been prevented by due care, is contrary to reason. It is not within the pro-

vince of the Legislature to divest rights by prescribing to the courts what should be *conclusive* evidence. This matter was fully considered by this court in the case of Cairo & Fulton Railroad Company v. Parks, 32 Ark., 131, which arose under a statute, which endeavored to make a county clerk's deed of lands, sold for taxes, *conclusive* of its recitals against the true owner. JUSTICE WALKER, in delivering the opinion, remarked : "The Legislature may declare what shall be received as evidence, but it cannot make that conclusively true which may be shown to be false ; at all events, if such facts are necessary to show that the substantial rights of property are to be affected, and he is made to lose his property." Railroad companies have the right to run their trains, and the consequent right of being protected in doing so, unless damage to others should result from some negligence, want of due care, or culpable neglect of reasonable precautions, imposed by the legislative power. It affects their substantial rights of property to be able to show the facts, and they cannot be constitutionally deprived of the power.

There are cases where this indisputable liability has been imposed upon railroads and sustained by the courts. It has generally been in those States whose circumstances and policy have required railroads to be fenced by the company, and where there have been express laws imposing this duty. These cases, obviously, rest upon the neglect of the company in fencing so as to keep animals off the track.

In Massachusetts, by statute, railroad companies are made absolutely liable for injuries by fire communicated from their engines ; but, in compensation, are given an insurable interest in any buildings along the route. The courts have sustained this law, but the nature of it is peculiar and exceptional, and the language too clear to admit of doubt.

In Georgia, by act of December 30, 1847, the Legislature

declared, in language substantially like ours, "that the several railroad companies of this State shall be held liable in law for any damage done to live stock or other property (to the owner or owners thereof) by the running of the cars or locomotives of such companies or their roads respectively." This is very broad and very positive, yet the courts of that State have never given it any other effect than to impose a *prima facie* liability and to shift the burden of proving due care on the company. *Macon & Augusta Railroad Company* v. *Vaughn*, 48 Ga., 464. The court, in that case, said: "A railroad company is not liable for an *unavoidable* accident, even under our statute, in relation to stock. If, with every reasonable precaution, proper lookout and proper speed, and proper attention, an unavoidable damage ensues, the company which has, by law, a right under such precautions, to run its trains, is not responsible." * * * * "The presumption is against the road, and the proof, under our law, must be made that there was no negligence, nor want of ordinary care."

To the same effect, upon a similar statute, have been the rulings in Alabama. *Mobile & Ohio Railroad Company* v. *Williams*, 53 Ala., 595 ; same case, 13 *Am. Railroad Rep., p.* 153.

This is a rational construction of legislative intention, and applicable as regards injuries to stock to our own statute, which, in many respects, seems modeled upon that of Georgia. The court erred in excluding from the jury all considerations of negligence. There were no formal pleadings in the case, but the jury should have been advised to consider all the circumstances developed by the evidence, as to whether the killing resulted from unavoidable accident or might have been prevented by the exercise of reasonable care on the part of defendant's agents. They should have been instructed, also, that the burden of proof was on the defendant, to show that

there had been no negligence, nor want of due care; but if it did show that, to find for defendant.

It is apparent that the verdict of $200 in this case is based upon an estimate of $100 as the value of the horse, and the instruction for double damages, for want of the subsequent notices prescribed by section 2 of the act.

The power of juries at law to render vindictive or punitive damages for certain classes of torts, is based upon the idea of blending the interests of society with the rights of suitors, and rendering the administration of civil justice ancillary to the deterring influences of more direct punishments on behalf of the State. The same idea has prompted the Legislature, at times, to prescribe double or treble damages to be rendered in behalf of individuals, in aid of some policy of the Legislature directed to the protection of property, or the peace of society, or the ready collection of the revenue of the State. We have many such laws upon our statute books, and the courts have never considered them amenable to the charge of taking property of A for B in any unconstitutional manner. For instance: By Sec. 3190 of *Gantt's Digest*, owners of animals breaking through, or over sufficient fences, are made liable to double damages for a second trespass; and by Sec. 3192, the person damaged by animals breaking an insufficient fence, is made liable in double damages for killing or otherwise hurting them.

The only distinction between such cases and this is, that in those cited, the circumstances which aggravate the injury exist, and characterize it at the time it is done; whilst in this case the aggravation of damages is made to depend upon a certain neglect of certain directions of the statute, framed for the purpose of giving notice to the neighborhood of the injury done. It is common in this State to turn stock upon the range, where they are not under the constant supervision of the owners. Injuries

L. R. & F. S. R. R. Co. vs. Payne.

to them cannot well be known at the time by the owners, whilst the agents of the road running the trains, are generally aware of it. The statute makes it the duty of the engineer or conductor of the train to give the prescribed notice, that the owner may have an opportunity of identifying his property and taking steps for his indemnification, or proposing, or receiving proposals for arbitration, whilst the matter is fresh. In furtherance of this policy it is by another section made a misdemeanor in any employee of the road to mutilate, disfigure, or carry off the carcass of any animal killed, without notifying two citizens to note and preserve the marks and value.

The regulation is a reasonable one, and the Legislature seems to have considered its neglect such a mark of carelessness and disregard of the property of others, as to connect it with the act of killing, and make the company liable in double damages for the act of its agent, attended with such subsequent neglect. The distinction between the cases is too nice to form the ground of a constitutional objection.

The Supreme Court of Nebraska, at the October term, 1877, in the case of Atchison & Nebraska Railroad v. Baty, held an act unconstitutional which gave double damages to the owner of live stock killed by a railroad, in case the value was not paid in thirty days after demand made therefor. It was supposed to be in conflict with that clause of their Constitution declaring that all fines and penalties should be appropriated exclusively to the support of common schools, and also with the declaration that no person should be deprived of life, liberty or property, without due process of law. A careful consideration of the reasoning and authorities cited in that case, has failed to satisfy us of the correctness of the conclusion. It is a grave matter to declare an act of the Legislature null and void, and we decline to do so upon a question of doubt.

The true construction of the act in question is, that the kill-

ing being shown or confessed, the presumption is that it was done by the train, and that it resulted from want of due care. At common law the *onus* of proving these facts was on the plaintiff. The statute shifts the burden to the defendant, but does not preclude the company from showing that such due care was exercised in pursuit of its lawful business as to absolve it from liability. In case the company may be liable at all, that liability is doubled by neglect of its agents to give the notice prescribed by the statute, but the failure to give notice does not impose or create a liability for an innocent act. Whether or not the fact that plaintiff had actual knowledge at the time of the injury to his horse, being present and witnessing the accident, renders the notice unnecessary, and prevents the liability for double damages from attaching, is a question not made by the instructions given or refused, and will not be noticed here.

For error in admitting the testimony of plaintiff's wife, and also of removing from the jury the question of negligence or due care on the part of defendant, the judgment will he reversed and the cause remanded for a new trial.