FEDERAL TRADE COMMISSION v. GRATZ et al.*

(Circuit Court of Appeals, Second Circuit.  May 14, 1919.)

No. 236.

TRADE-MARKS AND TRADE-NAMES ⬤�381½, New, vol. 8A Key-No. Series—UNFAIR COMPETITION—POWERS OF FEDERAL TRADE COMMISSION.

Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), giving the Federal Trade Commission power to investigate unfair methods of competition, does not contemplate the prohibition of unfair methods of competition between individuals, there being no authority given to individuals to present grievances, hence where defendants, who engaged in selling ties and bagging for cotton bales, refused to sell to persons with whom they had had previous unsatisfactory relations, and refused to sell ties without bagging when there was fear that, owing to the scarcity of ties and the prospect of large crops, the marketing of the cotton crop might be endangered by creating corners in ties, the commission is not authorized to make any order compelling such sales. The unfair methods contemplated by the act are such as affect the public generally.

Petition to Revise Order of the Federal Trade Commission.

Petition of Warren, Jones & Gratz, by Anderson Gratz, for an order for the review of the findings and order of the Federal Trade

Commission, and for an order setting the same aside, in a proceeding against Anderson Gratz and Benjamin Gratz, copartners doing business under the firm name and style of Warren, Jones & Gratz, and others. Order reversed.

T. F. Magner, of Brooklyn, N. Y., for petitioner.
John Walsh, of Washington, D. C., for respondent.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a petition of Anderson Gratz, a member of the firm of Warren, Jones & Gratz, under section 5 of the Act of September 26, 1914, c. 311, 38 Stat. L. 719 (Comp. St. § 8836e), creating the Federal Trade Commission to review the following order of the commission:

"Therefore, it is ordered, that the respondents, Anderson Gratz and Benjamin Gratz, copartners, doing business under the firm name and style of Warren, Jones & Gratz, P. P. Williams, W. H. Fitzhugh and Alexander Fitzhugh, copartners, doing business under the firm name and style of P P. Williams & Co., and C. O. Elmer, their officers and agents, cease and desist from requiring purchasers of cotton ties to also buy or agree to buy, a proportionate amount of American Manufacturing Company's bagging, and, further, that the respondents cease and desist from refusing to sell cotton ties unless the purchasers buy or agree to buy from them corresponding amounts of American Manufacturing Company's bagging, or any amount of cotton bagging of any kind.

"By the Commission,          [Seal.]      L. L. Bracken, Secretary."

If Anderson Gratz has not sufficient standing to file this petition, counsel for the commission has very fairly waived the objection and invited the court to dispose of the questions raised.

The first count of the complaint served on the respondents, which is the only one involved is as follows:

"Paragraph 1. That the respondents Anderson Gratz and Benjamin Gratz are copartners, doing business under the firm name and style of Warren, Jones & Gratz, having their principal office and place of business in the city of St. Louis. and state of Missouri, and are engaged in the business of selling, in interstate commerce, either directly to the trade, or through the respondents hereinafter named, ties made and used for binding bales of cotton, and which steel ties are manufactured by the Carnegie Steel Company of Pittsburgh, Pa., and also selling, in the same manner jute bagging, used to wrap bales of cotton and which jute bagging is manufactured by the American Manufacturing Company, of St. Louis, Mo.

"Paragraph 2. That the respondents P. P. Williams, W. H. Fitzhugh, and Alex. Fitzhugh are copartners, doing business under the firm name and style of P. P. Williams & Co., having their principal office and place of business in the city of Vicksburg, and state of Mississippi, and the said last-named respondents and the said respondent Charles O. Elmer, who is located and doing business at the city of New Orleans, and state of Louisiana, are the selling and distributing agents of the said firm of Warren, Jones & Gratz, and sell and distribute the ties and bagging, manufactured as aforesaid, in interstate commerce, principally to jobbers and dealers, who resell the same to retailers, cotton ginners and farmers.

"Paragraph 3. That with the purpose, intent and effect of discouraging and stifling competition in interstate commerce in the sale of such bagging, all of the respondents do now refuse, and for more than a year last past have refused, to sell any of such ties unless the prospective purchaser thereof would also buy from them bagging to be used with the number of ties proposed to

be bought; that is to say, for each six of such ties proposed to be bought from the respondents the prospective purchaser is required to buy six yards of such bagging."

The respondents filed an answer admitting the facts stated in paragraphs 1 and 2, but denying the facts stated and the conclusion therefrom contained in paragraph 3. They appeared and offered testimony before the commission.

The commission's material findings of fact and its conclusions of law are as follows:

"Paragraph 2. That within three years last past respondents, Anderson Gratz and Benjamin Gratz, copartners, doing business under the firm name and style of Warren, Jones & Gratz, P. P. Williams, W. H. Fitzhugh, and Alexander Fitzhugh, copartners, doing business under the firm name and style of P. P. Williams & Co., and C. O. Elmer, adopted and practiced the policy of refusing to sell steel ties to those merchants and dealers who wished to buy them from them unless such merchants and dealers would also buy from them a corresponding amount of jute bagging. * * *

"Paragraph 4. * * * The dominating and controlling position occupied by said respondents in the sale and distribution of ties made it possible for them to force would-be purchasers of ties to also buy from them bagging manufactured by the American Manufacturing Company, and in many instances, said respondents refused to sell ties unless the purchaser would also buy from them a corresponding amount of bagging, and such purchasers were oftentimes compelled to buy bagging manufactured by the American Manufacturing Company, from said respondents, in order to procure a sufficient supply of steel ties used for the purpose aforesaid.

### "Conclusions of Law.

"That the methods of competition set forth in the foregoing findings as to the facts, in paragraphs 1, 2, 3 and 4, and each and all of them are, under the circumstances therein set forth, unfair methods of competition in interstate commerce, against other manufacturers, dealers and distributors of jute bagging and against other dealers and distributors in the material known as sugar bag cloth, and against manufacturers, dealers and distributors of the bagging known as rewoven bagging and secondhand bagging, in violation of the provisions of section 5 of an act of Congress approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes,' and that there is not sufficient proof submitted in the hearings to sustain the paragraph in the complaint charging a violation of section 3 of an act of Congress known as the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 731 [Comp. St. § 8835c])."

By agreement between the parties the commission filed a transcript of the entire record in the proceeding before it. This court is given power by the act to affirm, modify or set aside such an order, the commission's findings of fact to be conclusive if supported by testimony.

There is testimony to support the findings of fact, and therefore the question before us is whether they do support the commission's conclusion of law that the method of competition forbidden is unfair within the meaning of section 5 of the act of September 26, 1914.

It seems to us that unfair methods of competition between individuals are not contemplated by the act. Congress could not have intended to submit to the determination of the commission such questions as whether a person, partnership or corporation had treated or bribed the

employés of a competitor for the purpose of inducing them to betray their employer. We think the unfair methods, though not restricted to such as violate the Anti-Trust Acts, must be at least such as are unfair to the public generally. It seems to us that section 5 is intended to provide a method of preventing practices unfair to the general public and very particularly such as if not prevented will grow so large as to lessen competition and create monopolies in violation of the Anti-Trust Acts. Such a preliminary inquiry and determination constitutes a most important supplement in carrying out the public policy which those acts are intended to vindicate. This view is confirmed by the language of the section:

"Whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect, and containing a notice of a hearing upon a day and a place therein fixed at least thirty days after the service of said complaint."

No authority is given to any individual to present his grievances, and the commission is to interpose only in the interest of the public.

That the commission did not find sufficient proof to sustain the second count in the complaint, viz. that the method of the respondent found to be unfair violated section 3 of the act of October 15, 1914, known as the Clayton Act, which makes unlawful any condition, agreement or understanding that may lessen competition or tend to create a monopoly, shows that the method found to be unfair must have been unfair in certain individual transactions. And we discover no evidence to support the finding in paragraph 2 that the respondents "adopted and practiced the policy of refusing to sell steel ties to those merchants and dealers who wished to buy them from them unless such merchants and dealers would also buy from them a corresponding amount of jute bagging." It is the natural and prevailing custom in the trade to sell ties and bagging together, just as one witness testified it is to sell cups and saucers together. Such evidence as there is of a refusal to sell is a refusal to sell at all to certain persons with whom the respondents had previous unsatisfactory relations and a refusal to sell ties without bagging at the opening of the market in 1916 and 1917, when there was fear that, owing to the scarcity of ties and the prospect of large crops, the marketing of the cotton crop might be endangered by speculators creating a corner in ties. The evidence is that with these exceptions the respondents sold ties without any restrictions to all who wanted to buy, and indeed made extraordinary efforts to induce the manufacturers of ties to increase their output so that all legitimate dealers and all cotton raisers should get enough ties and bagging at reasonable rates to market their cotton. It is only these exceptional and individual cases, which established no general practice affecting the public that can sustain the findings in paragraph 4.

Counsel for the commission calls our attention to the opinion of the Circuit Court of Appeals for the Seventh Circuit, Sears, Roebuck &

Co., Petitioners, v. Federal Trade Commission, Respondent, 258 Fed. 307, —— C. C. A. ——. The practice there prohibited as unfair was extensive advertising containing false and misleading statements calculated to deceive all purchasers and to discredit all competitors. It was clearly a method unfair to the public generally.

As we think there is no evidence to support any general practice of the respondents to refuse to sell ties unless the purchaser bought at the same time the necessary amount of the American Manufacturing Company's bagging, and that the commission has no jurisdiction to determine the merits of specific individual grievances, the order is reversed.