## NEW JERSEY ASBESTOS CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Second Circuit.   February 26, 1920.)

No. 91.

1. **Evidence ⬅21—Judicial notice taken of business practice to entertain customers and their employés.**

   The court takes judicial notice that the practice of entertaining customers and employés of customers by furnishing them liquor, cigars, meals, theater tickets, etc., found by the Federal Trade Commission to be unfair, has been an incident of business from time immemorial, especially as expenditures for such purposes are recognized as a proper deduction by the income tax regulations.

2. **Master and servant ⬅30(4)—Gifts to employé to induce contract is fraud, justifying discharge.**

   The payment of money or the giving of valuable presents to an employé to induce him to influence his employer to make a contract of purchase is a fraud, justifying the employé's discharge within his contract term of service.

3. **Trade-marks and trade-names ⬅80½, New, vol. 8A Key-No. Series—Federal Trade Commission without jurisdiction to regulate entertainment of customer's employés.**

   The practice of a company engaged in interstate commerce in entertaining employés of its customers with liquor, cigars, meals, theater tickets, etc., is not a matter so affecting the public as to be within the jurisdiction of the Federal Trade Commission.

Petition to Review Order of Federal Trade Commission.

Petition by the New Jersey Asbestos Company for review of an order of the Federal Trade Commission.   Order reversed.

Robert W. Crawford, of New York City, for petitioner.

Edward L. Smith, of Washington, D. C. (Claude R. Porter and Charles S. Moore, both of Washington, D. C., of counsel), for respondent.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge.   January 6, 1919, the Federal Trade Commission issued a complaint against the New Jersey Asbestos Company, under section 5 of the Act of September 26, 1914 (Comp. St. § 8836e), entitled "An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes," alleging that the company had during the year 1918 been giving to employés of its customers and prospective customers liquors, cigars, meals, theater tickets, valuable presents, and sums of money and entertainments to induce them to influence their employers to purchase the company's products and that

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a proceeding by the commission in respect thereof would be to the interest of the public.

The company filed an answer, admitting that it is engaged in interstate as well as intrastate business, and that it had paid reasonable amounts in furnishing entertainment to employés of customers, and as incidental to such entertainment had supplied liquors, cigars, meals, and theater tickets, but denying that this was done for the purpose of inducing them to influence their employers to buy its goods, and especially denying that it ever gave them valuable presents or sums of money.

The charge of giving valuable presents and sums of money has been abandoned by the commission. May 27, 1919, the commission filed its report and two findings of fact, and its conclusion of law, as follows:

"First. That the respondent, the New Jersey Asbestos Company, is a corporation organized, existing, and doing business under and by virtue of the laws of the state of New Jersey, having its principal office and place of business at the city of New York, in the state of New York, and is now, and for more than one year last past has been, engaged in manufacturing and selling engine packings composed of asbestos, metal and asbestos, flax, wood fiber, and kindred products, throughout the states and territories of the United States, and that at all times hereinafter mentioned, the respondent has carried on and conducted such business in direct competition with other persons, firms, copartnerships, and corporations manufacturing and selling like products.

"Second. That said respondent, the New Jersey Asbestos Company, in the course of its business of manufacturing and selling engine packings composed of asbestos, metal and asbestos, flax, wood fiber, and kindred products, throughout the states and territories of the United States, for more than one year last past, has been lavishly giving gratuities, such as liquor, cigars, meals, theater tickets, and entertainment, to employés of customers as an inducement to influence their employers to purchase or to contract to purchase from the said respondent, the New Jersey Asbestos Company, engine packings composed of asbestos, metal and asbestos, flax, wood fiber, and kindred products, without other consideration therefor.

#### "Conclusion.

"That the methods set forth in the foregoing findings of fact, under all the circumstances therein set forth, are unfair methods of competition, in violation of the provisions of section 5 of the act of Congress, approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes.'"

The findings of fact being mere conclusions, it is necessary to examine the evidence to see whether they are supported by any testimony or not. It shows that the officers of the company in the year 1918 did entertain at the company's expense both customers and employés of customers, and that the salesmen down to May 1st were employed on a salary or on a salary and commission basis, and were allowed to charge in their monthly accounts reasonable lump sums for entertainment. After May 1st they were on a commission basis only, and any entertainment given by them was given at their own expense.

[1] We have held in Federal Trade Commission v. Gratz, 258 Fed. 314, 169 C. C. A. 330, that only unfair practices which affect the public, as distinguished from individuals, are within the jurisdiction of the commission. We take judicial notice of the fact that the method of entertainment found to be unfair has been an incident of business

from time immemorial. It is recognized by article 133 of the regulations covering the assessment of income tax promulgated January 2, 1918 as follows:

"*Spending Money.*—So-called spending or treating money, if actually advanced by corporations to their traveling salesmen to be used by them as a part of the expenses incident to selling the product of such corporations, is an allowable deduction in a return of income by such corporations. The deduction of such expenditures is conditioned upon a satisfactory showing that all the allowance claimed as a deduction was actually expended for and was an ordinary and usual expense incurred in selling the product or merchandise of the corporation."

[2, 3] The payment of money or the giving of valuable presents to an employé to induce him to influence his employer to make a contract of purchase is a fraud justifying the discharge of the employé within his contract term of service, and perhaps the recovery by the purchaser of the amount or value of such inducement from the seller, upon the theory that it must have been included in the price. But even in such a case we think it would be a matter between individuals, and not one so affecting the public as to be within the jurisdiction of the commission, under our decision in the Gratz Case, supra. However, it stretches theory to the breaking point to suppose that the entertainment expenses found unfair in this case constitute fraud practiced by the respondent and by the employés on the purchasers of the respondent's goods. It is difficult to conceive that the purchaser would have a right to recover the amount of such entertainment as a part of the price paid for the goods bought, or that he would have a right to discharge the employé within the term of his service on this ground. So broad a construction of the statute would bring within the disposition of the commission a vast number of subjects and controversies which in their nature belong to the legislative and judicial departments of the government. For instance, advertising is a method of selling goods which, without increasing their merits, increases their cost; and so does securing servants of competitors by paying them higher wages, though we suppose no one would say the act gives the commission a right to regulate these matters.

The order is reversed.