### WINSTED HOSIERY CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Second Circuit.    April 13, 1921.)

No. 200.

1. **Trade-marks and trade-names ☞80½, New, vol. 8A Key-No. Series—Trade Commission can only prevent unfair competition.**

   The Federal Trade Commission is authorized by Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), only to inquire into unfair methods of competition in interstate and foreign commerce, if so doing will be of interest to the public, and to issue an order requiring a person or corporation employing unfair methods to desist from doing so, but is not made a censor of commercial morals generally.

**2. Trade-marks and trade-names ⓒ—80½, New, vol. 8A Key-No. Series—Misbranding which deceives only consumers is not unfair competition, within Trade Commission's jurisdiction.**

The practice by an underwear manufacturer of branding its products as wool, merino, etc., when in fact they were composed only partly of wool or merino, which was shown to be in conformity to the universal custom among manufacturers of such articles, and not to deceive the trade, though it did mislead some customers, is not unfair competition, within the Trade Commission Act (Comp. St. §§ 8836a–8836k), so that the Trade Commission cannot order the manufacturer to desist from such practices.

Petition to Revise Order of the Federal Trade Commission.

Petition by the Winsted Hosiery Company to revise an order of the Federal Trade Commission. Order reversed.

Certiorari granted 255 U. S. ——, 41 Sup. Ct. 625, 65 L. Ed. ——.

Wood, Molloy & France, of New York City (M. J. France, of New York City, of counsel), for petitioner.

Adrien F. Busick, J. T. Clark, and Marvin Farrington, all of Washington, D. C., for respondent.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. October 30, 1918, the Federal Trade Commission issued a complaint against the Winsted Company for a violation of section 5 of the Act of September 26, 1914 (Comp. St. § 8836e); it appearing to the Commission that a proceeding by it in respect thereof would be to the interest of the public. The particular charge made was:

"Paragraph 3. That for more than one year last past, the respondent, Winsted Hosiery Company, with the purpose, intent, and effect of stifling and suppressing competition in the manufacture and sale of underwear in interstate commerce, has in the conduct of its business manufactured and sold in commerce aforesaid, and labeled, advertised, and branded certain lines of underwear composed of but a small amount of wool as 'Men's Natural Merino Shirts,' 'Men's Gray Wool Shirts,' 'Men's Natural Wool Shirts,' 'Men's Natural Worsted Shirts,' 'Australian Wool Shirts.' That such advertisements, brands, and labels are false and misleading, and calculated and designed to and do deceive the trade and general public into the belief that such underwear is manufactured and made and composed wholly of wool."

The answer of the defendant set up among other things:

"Paragraph 2. Denies each and every allegation contained in paragraph marked 'Paragraph Third' of the complaint herein, except that the respondent admits that for more than one year last past it has in the conduct of its business manufactured and sold in commerce (as set forth in the complaint herein) and labeled, advertised, and branded certain lines of underwear as 'Men's Natural Merino Shirts,' 'Men's Gray Wool Shirts,' 'Men's Natural Worsted Shirts,' 'Australian Wool Shirts,' 'Men's Natural Wool Shirts.' And respondent further admits that such underwear so manufactured and made are not composed wholly of wool.

"For a further and separate defense to the complaint herein, respondent alleges as follows:

"Paragraph Third. That for the past 20 years, and at the present time, it has been a general custom and practice in the underwear business to manufacture, label, advertise, and brand underwear as 'Natural Merino,' 'Wool,' 'Nat-

---

ⓒ—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ural Wool,' 'Natural Worsted,' and 'Australian Wool,' when such underwear so described is not composed wholly of wool, but, on the contrary, is composed only in part of wool, varying in the percentage of wool according to the different mills manufacturing such underwear, to meet the varying demands of the trade solicited and served, and, further, that said general custom and practice has been and now is universal in the underwear trade throughout the United States, and has been followed by all the manufacturers engaged therein, and, further, that said general custom and practice has been and now is well known to and, recognized by the distributors of underwear throughout the United States."

For the purpose of expediting the proceeding and of avoiding the time and expense incident to a hearing, a statement of facts was agreed upon which contains among other things:

"Paragraph 7. That for the past 20 years it has been a general custom and practice in the underwear business to manufacture, label, advertise, and brand underwear, and such wearing apparel as 'Natural Merino,' 'Wool,' 'Natural Wool,' 'Natural Worsted,' and 'Australian Wool,' when in fact such underwear so described is not composed wholly of wool, and is composed only in part of wool, varying in the percentage of wool according to the different mills manufacturing underwear to meet the varying demands of the trade solicited and served; that this custom and practice is general and universal in the underwear trade throughout the United States, and is followed by manufacturers engaged therein; that there are a few manufacturers of underwear whose products are composed wholly of wool and are branded and labeled by them as 'All Wool'; that large quantities of underwear and similar wearing apparel has been imported into the United States from foreign countries, and it comes into direct competition with the underwear manufactured in the mills throughout the United States; that the underwear and similar wearing apparel so imported into the United States has been and now is labeled, branded and advertised as 'Wool,' 'Merino,' and 'Worsted' underwear, in accordance with the general custom and practice in the underwear trade in the United States, although the said underwear is not composed wholly of wool, but, on the contrary, is composed partly of wool in varying percentages."

The Commission filed its conclusion of law as follows:

"From the foregoing findings the Commission concludes that the method of competition set forth is, under the circumstances set forth, in violation of the provisions of section 5 of an act of Congress approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes.'"

And it issued its order to cease and desist as follows:

"Now, therefore, it is ordered that the respondents, Winsted Hosiery Company, its officers, agents, representatives, servants, and employees, cease and desist from directly or indirectly employing or using the labels and brands 'Wool,' 'Merino,' and 'Worsted,' or any similar descriptive brands or labels on underwear, socks, or other knit goods composed partly of wool, except either (1) when a knit fabric is made entirely of wool yarns of a kind specified, or (2) when the term describing the wool stock is joined with the name of other staple or staples contained in the knitted fabric (e. g., Wool and Cotton; Worsted and Cotton; Wool, Worsted, Merino, and Cotton; Worsted, Cotton, and Artificial Silk).

"Respondent is further ordered to file a report in writing with the Commission, three months from notice hereof, stating in detail the manner in which this order has been complied with and conformed to."

March, 1920, the Winsted Company filed its petition in this court to set aside the order. Thereupon the Commission applied for permis-

sion to take additional evidence under section 5 of the act, which was granted. A great deal of testimony was taken by the Commission, which fully established that the trade was not misled in any respect by the label complained of. But some witnesses testified that in their opinion some part of the consuming public was or might be misled into thinking the underwear so described was pure wool.

January 14, 1921, the following modification of its original order to cease and desist was issued by the Commission:

"This proceeding having been heard by the Federal Trade Commission upon complaint of the Commission, the answer of the respondent, the statement of facts, agreed upon by counsel for the Commission and respondent, and upon the additional evidence taken for the Commission under an order of the United States Circuit Court of Appeals for the Second Circuit, dated October 18, 1920, and the Commission having, by reason of such additional evidence, modified some of its original findings and adopted new findings as to the facts, and adopted its conclusion that the respondent has violated the provisions of the act of Congress approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes,' it now recommends the following modification of its original order to cease and desist herein, dated January 20, 1920: .

"It is now ordered that the respondent, the Winsted Hosiery Company, its officers, agents, representatives, servants, and employees, do cease and desist from employing or using as labels or bands on underwear or other knit goods not composed wholly of wool, or on the wrappers, boxes, or other containers in which they are delivered to customers, the word 'Merino,' 'Wool,' or 'Worsted' alone or in combination with any other word or words, unless accompanied by a word or words designating the substance, fiber, or material other than wool of which the garments are composed in part (e. g., 'Merino, Wool, and Cotton'; 'Wool and Cotton'; 'Worsted, Wool, and Cotton'; 'Wool, Cotton, and Silk'), or by a word or words otherwise clearly indicating that such underwear or other goods is not made wholly of wool (e. g., part wool).

"Respondent is further ordered to file a report in writing with the Commission, three months from notice hereof, stating in detail the manner in which this order has been complied with and conformed to."

[1] The Commission is not made a censor of commercial morals generally. Its authority is to inquire into unfair methods of competition in interstate and foreign commerce, if so doing will be of interest to the public, and if such method of competition is prohibited by the act to issue an order requiring the person or corporation using it to cease and desist from doing so. We have heretofore so understood the extent of the Commission's authority in Federal Trade Commission v. Gratz, 258 Fed. 314, 169 C. C. A. 330, affirmed 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993, and New Jersey Asbestos Co. v. Federal Trade Commission (C. C. A.) 264 Fed. 509.

[2] In this case there was obviously no unfair method of competition as against other manufacturers of underwear. The labels were thoroughly established and understood in the trade. There was no passing off of the petitioner's goods for those of another manufacturer. There was no combination in restraint of trade nor any attempt to establish a monopoly. Manifestly no other manufacturer of underwear could have maintained a suit against the petitioner for unfair competition or for an injunction or damages under the anti-trust acts. Assuming that some consumers are misled because they do not understand the trade signification of the labels, or because some retailers deliberately de-

ceive them as to its meaning, the result is in no way connected with unfair competition, but is like any other misdescription or misbranding of products. Conscientious manufacturers may prefer not to use a label which is capable of misleading, and it may be that it will be desirable to prevent the use of the particular labels, but it is in our opinion not within the province of the Federal Trade Commission to do so.

The order is reversed.