## WHOLESALE GROCERS' ASS'N OF EL PASO, TEX., et al. v. FEDERAL TRADE COMMISSION.

## H. LESINSKY CO. v. SAME.

(Circuit Court of Appeals, Fifth Circuit.    January 6, 1922.)

Nos. 3653, 3677.

1. **Trade-marks and trade-names and unfair competition ⊜≈80½, New, vol. 8A Key-No. Series—One not named in Federal Trade Commission's order against unfair competition not entitled to review thereof.**

    Since by the terms of Federal Trade Commission Act, § 5 (Comp. St. § 8836e), only a party required by an order of the Commission to desist from using what is found by the Commission to be an unfair method of competition is given the right to obtain a review of such order by the Circuit Court of Appeals, a wholesale grocers' association was not entitled to maintain a petition to review an order as to unfair competition where not named therein.

2. **Trade-marks and trade-names and unfair competition ⊜≈80½, New, vol. 8A Key-No. Series—Order of Federal Trade Commission restraining unfair competition sustained by evidence.**

    An order by the Federal Trade Commission restraining unfair competition held supported by evidence showing concert of action by those petitioning for a review of such order to prevent sales by manufacturers and their agents to a wholesale and retail grocery company of food products and other groceries in wholesale quantities at the prices and on the terms accorded to other wholesalers, and that such concert of action was a result of an agreement to which petitioners and others were parties, and that by such means the grocery company was hindered and prevented from buying as a wholesaler in interstate commerce as it would have done without such opposition.

3. **Trade-marks and trade-names and unfair competition ⊜≈80½, New, vol. 8A Key-No. Series—Evidence of express agreement unnecessary to sustain order against unfair competition.**

    To sustain charges of unfair competition made to the Federal Trade Commission, evidence of express agreements to obstruct or prevent dealings is not necessary, since a conspiracy may be inferred from things actually done by the alleged conspirators, where such things are the natural consequences of an agreement to do them and helped to accomplish a disclosed common purpose.

4. **Trade-marks and trade-names and unfair competition ⊜≈80½, New, vol. 8A Key-No. Series—Credibility of testimony held for Federal Trade Commission.**

    On an application to the Federal Trade Commission for an order restraining unfair competition among wholesalers, the credibility of testimony is for the Commission.

5. **Trade-marks and trade-names and unfair competition ⊜≈68—Conspiracy by wholesalers to prevent sales by manufacturers to competitor held unfair competition.**

    That associated jobbers and wholesalers combined and co-operated with others to keep manufacturers willing to do so from selling their products direct to a wholesale company in competition with them, and by that means prevented such company from competing as a wholesaler on the ground that such company also sold at retail, held to constitute unfair methods of competition in commerce, within Federal Trade Commission Act, § 5 (Comp. St. 8836e), as being against the public policy evidenced by the Sherman Act (Comp. St. §§ 8820–8823, 8827–8830).

---

⊜≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition to Revise Order of Federal Trade Commission, Sitting at Washington, D. C.

Separate petitions by the Wholesale Grocers' Association of El Paso, Tex., and others, and by the H. Lesinsky Company, against the Federal Trade Commission to revise an order. Petitions denied.

A. H. Culwell, of El Paso, Tex., for petitioners Wholesale Grocers' Association of El Paso, Tex., and others.

Otis Beall Kent, of Washington, D. C., for petitioner H. Lesinsky Co.

W. H. Fuller, Chief Counsel, and Marvin Farrington, both of Washington, D. C., for respondent.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. By separate petitions filed in this court against the Federal Trade Commission by, respectively, the Wholesale Grocers' Association of El Paso, Tex., an unincorporated voluntary association of wholesale grocery firms and corporations doing business in El Paso, Trueba-Zozaya-Seggerman, Inc., Bray & Co., Inc., James A. Dick Company, American Grocery Company (the four parties last named being joined in one petition), the H. Lesinsky Company, W. H. Constable Company, and Dan T. White and John H. Grant, partners doing business under the name of White-Grant Company, a review of an order made by the Federal Trade Commission against the petitioners and others is sought. The respective parties will be referred to as the petitioners and the Commission.

The order complained of was made in a proceeding which was initiated by a written complaint made by the Commission against the petitioners and others, some of the parties so proceeded against being wholesale grocers or jobbers having their principal offices and places of business at El Paso, and others being brokers engaged in the business at El Paso of selling the products of manufacturers of groceries and food products. That complaint contained the following:

"That the Standard Grocery Company is a corporation having its principal place of business at El Paso, in the state of Texas, and also having a place of business at Deming, in the state of New Mexico, and is engaged in the business of buying and selling in wholesale quantities, and in the usual course of wholesale trade, groceries and food products such as are bought and sold generally by persons, firms, and corporations engaged in the business generally known as that of a wholesale grocer; that in the course of its said business the Standard Grocery Company purchases commodities dealt in by it in the various states and territories of the United States, and transports the same through other states and territories to the city of El Paso, in the state of Texas, where such commodities are resold, and there is continuously and has been at all times herein mentioned a constant current of trade and commerce in commodities so purchased by the said Standard Grocery Company between and among the various states and territories of the United States; that the said Standard Grocery Company is in active competition with the respondents named in paragraph 3 hereof."

The parties referred to in the last sentence of the quoted paragraph were the wholesale grocers proceeded against. That complaint charged:

That said wholesale grocers combined and conspired together and with the other parties proceeded against, and with others, " * * * to prevent the said Standard Grocery Company from obtaining commodities dealt in by it from manufacturers and manufacturers' agents, and other usual sources from which a wholesale dealer in groceries must obtain the commodities dealt in by him, and have by boycott and threats of boycott, in many instances, induced manufacturers of grocery products, and the agents of such manufacturers, to refuse to sell their products to the said Standard Grocery Company, and have threatened to withdraw their patronage from any and all manufacturers and manufacturers' agents who sell to the said Standard Grocery Company upon the same terms and conditions usually accorded to buyers and sellers of such commodities in wholesale quantity in said district or who sell to said Standard Grocery Company at the prices regularly charged to dealers in such commodities in said district who buy and sell in wholesale quantities. * * * "

## It charged:

That the brokers proceeded against, with the purpose, intent, and effect of stifling and suppressing competition in the sale of grocery products at wholesale, combined and conspired together and with the other parties proceeded against, and with others, " * * * to prevent the said Standard Grocery Company from obtaining the commodities dealt in by it from manufacturers and manufacturers' agents, and other usual sources from which a wholesale dealer in groceries must obtain the commodities dealt in by him, and to prevent manufacturers and manufacturers' agents from selling to said Standard Grocery Company upon the same terms and conditions usually accorded to buyers and sellers of such commodities in wholesale quantity in said district, or from selling to said Standard Grocery Company at the prices regularly charged to dealers in such commodities in said district who buy and sell in wholesale quantities; * * * " that said brokers have permitted said jobbers " * * * to persuade, induce, and compel them by boycott and threats of boycott, to refuse to sell the products manufactured by their respective principals to the said Standard Grocery Company, and to refuse to sell to said Standard Grocery Company upon the same terms and conditions usually accorded to buyers and sellers of such commodities in wholesale quantity in said district, or to sell to said Standard Grocery Company at the prices regularly charged to dealers in such commodities in said district who buy and sell in wholesale quantities."

## That complaint further charged:

That each of the parties so proceeded against " * * * has been for a period of two years last past and is now wrongfully and unlawfully hampering and obstructing and attempting to hamper and obstruct the said Standard Grocery Company, by inducing and compelling and attempting to induce and compel manufacturers of grocery products and their agents to refuse to sell to said Standard Grocery Company, in interstate commerce, upon the terms and conditions, and at the prices usually accorded to dealers in said district who buy and sell in wholesale quantities, and have attempted to compel said Standard Grocery Company to pay for the commodities purchased by it prices higher than those charged to other dealers in said district who buy and sell in wholesale quantities."

After that complaint was answered by the petitioners and others, after much evidence had been taken, and after a hearing thereon and argument of counsel, the Commission, on November 9, 1920, made in writing its findings as to the facts and conclusion, such findings of fact including several which, taken together, were to the effect in substance that specified acts and conduct of the petitioners and others were such as were charged in the complaint, the following being the stated conclusion:

"The acts, agreements, understandings, policies, and practices of the respondent jobbers and the respondent brokers, and each and all of them, are unfair methods of competition in interstate commerce and constitute a violation of the act of Congress approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes.'"

On the same day the Commission made an order of which, except its caption and a recital as to the making of such findings and conclusion, the following is a copy:

."Paragraph 1. It is therefore now ordered that the respondents, F. S. Ainsa Company, M. Ainsa & Sons, Inc., American Grocery Company, Inc., Bray & Company, Inc., the James A. Dick Company, the H. Lesinsky Company, Trueba-Zazaya-Seggerman, Inc., Western Grocery Company, Inc., Dan T. White and John H. Grant, doing business under the name of White-Grant Company, J. W. Lorentzen, doing business under the name of J. W. Lorentzen & Co., H. W. Taylor and H. C. Smith, doing business under the name of Taylor & Smith, John H. McMahon, doing business under the name of John McMahon & Co., W. T. Bush, W. H. Constable Co., Inc., and Sims, Robert & Co., Inc., legal successor to the George H. Griggs Company, and each of them and their officers and agents, forever cease and desist from directly or indirectly:

"(a) Combining and conspiring among themselves to induce, coerce, and compel manufacturers or manufacturers' agents to refuse to sell to the Standard Grocery Company, or to refuse to sell to said Standard Grocery Company upon the terms and at the prices offered at and charged to competitors of said company, or to refuse to sell to others engaged in similar business.

"(b) Carrying on between and among themselves or with others communications having the purpose, tendency, or effect of inducing, coercing, or compelling manufacturers and manufacturers' agents to refuse to deal with or sell to the Standard Grocery Company or others engaged in similar business upon terms agreed upon between such manufacturers or their agents and said company and others.

"(c) Combining and conspiring among themselves or with others, or using any scheme or device whatsoever, to hinder, obstruct, and prevent the Standard Grocery Company or others engaged in similar business from freely purchasing and obtaining in interstate commerce the commodities and products usually handled by it in the course of its business, or from freely competing in interstate commerce with the respondents F. S. Ainsa Company, Inc., M. Ainsa & Sons, Inc., Bray & Company, Inc., the James A. Dick Company, the H. Lesinsky Company, American Grocery Company, Inc., Trueba-Zozaya-Seggerman, Inc., and Western Grocery Company, Inc., or others engaged in similar business.

"(d) Hindering obstructing, or preventing any manufacturer or manufacturers' agent from selling and shipping in interstate commerce to the Standard Grocery Company or others engaged in similar business.

"(e) Combining or conspiring together or with others, or using any schemes or devices whatsoever, to hinder, obstruct, or prevent manufacturers or their agents from dealing with the Standard Grocery Company or others engaged in similar business upon any terms agreed upon by such manufacturers or their agents and said company and others.

"(f) Combining or conspiring among themselves or with others to compel or attempt to compel the Standard Grocery Company or others engaged in similar business to purchase the products and commodities required for its business from or through any competitor of said company or others similarly engaged.

"Paragraph 2. It is further ordered that the respondents F. S. Ainsa Company, Inc., M. Ainsa & Sons, Inc., American Grocery Company, Inc., Bray & Company, Inc., The James A. Dick Company, the H. Lesinsky Company, Trueba-Zozaya-Seggerman, Inc., and Western Grocery Company, Inc., and their officers and agents, forever cease and desist from:

"(a) Combining and conspiring among themselves or with others to boycott, or to threaten to boycott, or to threaten with loss of custom or patronage, any manufacturer engaged in interstate commerce or the agent or representative of such manufacturer for selling or agreeing to sell to the Standard Grocery Company or others engaged in similar business at prices regularly charged competitors of said company or others engaged in similar business.

"Paragraph 3. It is further ordered that the respondents Dan T. White and John H. Grant, doing business under the name of White-Grant Company, J. W. Lorentzen, doing business under the name of J. W. Lorentzen & Co., II. W. Taylor and H. C. Smith, doing business under the name of Taylor & Smith, John H. McMahon, doing business under the name of John McMahon & Co., W. T. Bush, Sims, Robert & Company, Inc., legal successor to the George H. Griggs Company, and W. H. Constable Company, Inc., and their officers and agents forever cease and desist from:

"(a) Combining and conspiring among themselves or with the other respondents herein or with others to hinder, obstruct, or prevent the Standard Grocery Company or others engaged in similar business from freely purchasing and obtaining in interstate commerce the products and commodities dealt in by it in the course of its business, or to induce, coerce, or compel manufacturers, producers, or dealers engaged in interstate commerce to refuse to sell to said Standard Grocery Company or others engaged in similar business."

Five of the petitioners are wholesalers or jobbers named in the first clause of paragraph 1 of the above order. Two of the petitioners are brokers named in the first clause of paragraph 2 of that order.

[1] By the terms of section 5 of the Federal Trade Commission Act (38 St. 717; U. S. Compiled Statutes, § 8836e), only a party required by an order of the Commission to cease and desist from using what is found by the Commission to be an unfair method of competition in interstate or foreign commerce is given the right to obtain a review of such order by this court. The petitioner the Wholesale Grocers' Association of El Paso, Tex., as a separate entity, is not entitled to maintain its petition, as it was not named in the above set out order to cease and desist. That association, the members of which were wholesale grocers or jobbers at El Paso, came into existence in the fall of 1917 at the request of the local representative of the United States Food Administration, for the purpose of discussing and complying with rules and regulations promulgated during the war by the Food Administration and other government agencies having to do with conservation, profiteering, and other matters dealt with by such agencies. The meetings of the association were held informally from time to time in the offices of different members, and were attended more or less regularly by the members, including those who are petitioners in this case. No formal minutes or records of the proceedings of the association were kept. The jobbers so coming together did not confine their discussions to the subjects for dealing with which the association was formed. Among subjects discussed by the jobbers when so brought together was that of manufacturers selling to grocers doing both a wholesale and a retail business; those discussions having special reference to the case of sales by manufacturers to the Standard Grocery Company. It was disclosed that the associated jobbers, without dissent, condemned the practice of some manufacturers in selling to that company on the same terms and conditions as those accorded to such jobbers. The Standard Grocery Company, which was organized in 1916, owned and

operated six retail grocery stores in El Paso, in one of which it conducted for several years a wholesale grocery business, having storage and warehouse facilities therefor in the basements of several of its storehouses. In the fall of 1917 it opened a branch house at Deming, N. M., where it engaged, until about January 1, 1919, exclusively in the business of buying and selling in wholesale quantities groceries and other food products; its purchases and sales, at both El Paso and Deming, including such as were transactions in interstate commerce. It was in active competition at El Paso and Deming with the associated jobbers, both it and such jobbers selling to retail grocers, restaurants, cafés, commissaries of industrial and railway companies, army post exchanges and zone supply offices, civilian branches of the United States government, army hospitals, and other federal and state institutions. Following such discussions and adverse criticisms of the associated jobbers there were numerous instances of it being brought to the attention of manufacturers that sales by them direct to the Standard Grocery Company were objected to by the associated jobbers at El Paso, and that the continuance of such sales would cause those jobbers to withhold patronage from such manufacturers; the means whereby such manufacturers were so advised including letters to them from brokers at El Paso handling their products plainly disclosing that sales of those products direct to the Standard Grocery Company constituted an obstacle to selling those products to the associated jobbers at El Paso, numerous inquiries made by such jobbers of traveling salesmen of manufacturers as to whether their principals sold direct to the Standard Grocery Company, and other incidents indicating that such sales were condemned by the associated jobbers and the brokers at El Paso.

[2] We are of opinion that direct and circumstantial evidence adduced furnished support for the inferences that there was concert of action by the petitioners and others with the object of preventing sales by manufacturers and their agents to the Standard Grocery Company of food products and other groceries in wholesale quantities, at the prices and on the terms accorded to other wholesalers or jobbers similarly situated, that that concert of action was a result and in pursuance of an agreement or understanding to which the petitioners and others were parties, and that by the means indicated sales by manufacturers and their agents to the Standard Grocery Company were hindered or impeded, and that company was prevented from buying as a wholesaler in interstate commerce as it would have done without such opposition by the petitioners and others co-operating with them.

It is contended that the attacked order should be set aside: (1) Because the evidence upon which the Commission acted did not support any of its findings as to the petitioners combining, conspiring, and co-operating as set forth; and (2) because the conduct of the petitioners stated in the findings did not amount to or involve an unfair method of competition in commerce, within the meaning of the provision of section 5 of the Federal Trade Commission Act (38 Stat. 717).

[3, 4] Evidence of an express agreement to obstruct or prevent dealings with the Standard Grocery Company as a legitimate wholesaler or jobber was not necessary to support the charges made. A conspiracy

may be inferred from the things actually done by the alleged conspirators, where those things are the natural consequences of an agreement or understanding to do them, and help to accomplish a disclosed common purpose. Eastern States Lumber Association v. United States, 234 U. S. 600, 612, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788. What happened after it was disclosed that the associated jobbers were in accord in condemning sales of their products by manufacturers or their agents to a competitor which was obnoxious because it was a retailer as well as a wholesaler indicated the existence of an agreement or understanding between the petitioners and others to take concerted action to obstruct or prevent the continuance of such sales. As above indicated, we are not of opinion that the order of the Commission is subject to be set aside on the ground that no substantial evidence supporting its findings of fact was adduced. Failure to recognize or concede due probative effect to significant circumstances disclosed is a fault in criticism by counsel of the evidence adduced. Part of that criticism involves the assumption that the Commission was bound to believe testimony relied on to support the conclusion that conduct of one of the petitioners did not have the meaning or effect indicated by a written communication signed by its representative. It was for the Commission to pass on the credibility of that testimony.

Whether the conduct of the petitioners which is the subject of the attacked order to cease and desist comes within the meaning of the provision of the Federal Trade Commission Act declaring unlawful "unfair methods of competition in commerce" is a question of law presented for decision by this court. Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993. That conduct was concerted action having for its object the putting of a ban, within the trade range of the petitioners, upon manufacturers of food products or other groceries supplying their products at jobbers' prices and terms to a dealer doing or endeavoring to do both a wholesale and a retail business; a result of the success of such concerted action being to cut off such wholesale and retail dealer from sources of supply available to dealers whose business is exclusively wholesale. The facts of the instant case are quite similar to those passed on in the case of Eastern States Lumber Association v. United States, supra. The just cited case was an action brought by the United States under the Sherman Anti-Trust Act (26 Stat. 209; Comp. St. §§ 8820–8823, 8827–8830), having for its object an injunction against certain alleged combinations of retail lumber dealers, which, it was averred, had entered into a conspiracy to prevent wholesale dealers from selling directly to consumers of lumber. It was held in that case that the circulation of a so-called official report among members of an association of retail lumber dealers calling attention to actions of listed wholesale lumber dealers in selling direct to consumers tended to prevent members of the association from dealing with the listed dealers referred to in the report, and to directly and unreasonably restrain trade by preventing it with such listed dealers, and was within the prohibition of the Sherman Act. The following are extracts from the opinion rendered in that case:

"True it is that there is no agreement among the retailers to refrain from dealing with listed wholesalers, nor is there any penalty annexed for the failure so to do, but he is blind indeed who does not see the purpose in the predetermined and periodical circulation of this report to put the ban upon wholesale dealers whose names appear in the list of unfair dealers trying by methods obnoxious to the retail dealers to supply the trade which they regard as their own. * * *

"A retail dealer has the unquestioned right to stop dealing with a wholesaler for reasons sufficient to himself, and may do so because he thinks such dealer is acting unfairly in trying to undermine his trade. 'But,' as was said by Mr. Justice Lurton, speaking for the court in Grenada Lumber Co. v. Mississippi, 217 U. S. 433, 440, 'when the plaintiffs in error combine and agree that no one of them will trade with any producer or wholesaler who shall sell to a consumer within the trade range of any of them, quite another case is presented. An act harmless when done by one may become a public wrong when done by many acting in concert, for it then takes on the form of a conspiracy, and may be prohibited or punished, if the result be hurtful to the public or to the individual against whom the concerted action is directed.'"

The above-quoted decision is not rendered inapplicable to the facts of the instant case by the circumstances that the object of the concerted action to which the petitioners were parties was to restrict sales by manufacturers of their products to dealers who are exclusively wholesalers, instead of, as in the cited case, concerted action by retailers to prevent wholesalers selling directly to consumers, and that the methods adopted by the petitioners were different from those disclosed in the cited case. The just mentioned differences between the two cases are not material. In legal effect there is no substantial difference between a conspiracy by retailers to prevent wholesalers selling directly to consumers and a conspiracy by wholesalers to prevent manufacturers selling directly to dealers whose business includes both wholesaling and retailing. It well may be inferred that the lawmakers, in using in the Trade Commission Act the words "unfair methods of competition in commerce," intended to include concerted action to eliminate competition, in pursuance of what amounts to a conspiracy in restraint of trade or commerce among the several states, within the meaning of the Sherman Act. Federal Trade Commission v. Gratz, supra. What the associated jobbers severally did went beyond each of them refraining altogether or to a less extent from buying from manufacturers whose products were sold directly to the Standard Grocery Company. They combined and co-operated with others to keep manufacturers willing to do so from selling their products directly to the Standard Grocery Company, and by that means to obstruct or prevent that company from competing as a wholesaler in territory sought to be appropriated by dealers not doing a combined wholesale and retail business. The combining of wholesaling and retailing is not a novelty, and is not unlawful. The success of the concerted action participated in by the petitioners meant the monopolizing of the wholesale grocery business in the El Paso territory by dealers not engaged in retailing.

[5] We are of opinion that the practices forbidden by the attacked order were "unfair methods of competition in commerce," within the meaning of the provision of section 5 of the Federal Trade Commission Act, because, in the circumstances disclosed, they were against the

public policy evidenced by the Sherman Act. Federal Trade Commission v. Gratz, supra; National Harness Mfrs.' Association v. Federal Trade Commission (C. C. A.) 268 Fed. 705.

It follows from the above-stated conclusions that the petitions should be denied; and it is so ordered.

Petitions denied.